1  QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
2  Michael Carlinsky, *Pro Hac Vice*
   michaelcarlinsky@quinnemanuel.com
3  Jane M. Byrne, *Pro Hac Vice*
   janebyrne@quinnemanuel.com
4  Corey Worcester, *Pro Hac Vice*
   coreyworcester@quinnemanuel.com
5  51 Madison Avenue, 22nd Floor
   New York, NY 10010
6  Telephone: (212) 849-7000
   Facsimile:  (212) 849-7100
7
   Robert P. Vance, Jr. (Bar No. 310879)
8  bobbyvance@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
9  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
10 Facsimile: (213) 443-3100

11 *Attorneys for Defendants National General
   Insurance Company and National General
12 Holdings Corp.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R. A. FEUER, derivatively on behalf of WELLS FARGO & COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN D. BAKER, II, *et al.*<br><br>    Defendants,<br><br>    – and –<br><br>WELLS FARGO & COMPANY,<br><br>    Nominal Defendant. | Case No. 3:18-cv-02866-JST<br><br>**NATIONAL GENERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hon. Jon S. Tigar<br><br>Hearing Date: December 20, 2018<br><br>Hearing Time: 2:00 p.m.<br><br>Location: Courtroom 9, 19th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, CA |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ........................................................................................ 1

ISSUE TO BE DECIDED .............................................................................................................. 1

PRELIMINARY STATEMENT .................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................. 3

LEGAL STANDARD .................................................................................................................... 5

ARGUMENT ................................................................................................................................. 7

I.   The Board Was Disinterested and Independent For The Purpose of Considering Feuer's Supplemental Demand ........................................................................................................ 7

II.  The Board's Consideration of the Supplemental Demand Is Entitled To Business Judgment Deference ........................................................................................................... 8

    A.   Feuer Fails To Adequately Allege Gross Negligence ............................................... 9

    B.   Feuer Fails To Adequately Allege Bad Faith .......................................................... 10

CONCLUSION ............................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**            **Page**

*Andersen v. Mattel, Inc.*,
  2017 WL 218913 (Del. Ch. 2017) .................................................................. 6, 7, 9, 10, 12, 13

*Aronson v. Lewis*,
  473 A.2d 805 (Del. 1984) ........................................................................................................ 6

*Asbestos Workers Local 42Pension Fund v. Bammann*,
  2015 WL 2455469 (Del. Ch. 2015) ......................................................................................... 6

*Baron v. Siff*,
  1997 WL 666973 (Del. Ch. 1997) ..................................................................................... 8, 10

*Friedman v. Maffei*,
  2016 WL 1555331 (Del. Ch. 2016) ................................................................ 3, 7, 8, 10, 11, 12, 13

*Furman v. Walton*,
  2007 WL 1455904 (N.D. Cal. 2007) .................................................................................. 6, 13

*Grimes v. Donald*,
  673 A.2d 1207 (Del. 1996) .................................................................................................... 11

*Ironworkers District Council of Philadelphia & Vicinity Retirement & Pension Plan v. Andreotti*,
  2015 WL 2270673 (Del. Ch. 2015) ......................................................................... 7, 10, 11, 13

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991) ............................................................................................................. 6, 7

*Kaplan v. Peat, Marwick, Mitchell & Co.*,
  540 A.2d 726 (Del. 1988) ........................................................................................................ 6

*Levine v. Smith*,
  591 A.2d 194 (Del. 1991) ................................................................................................... 9, 10

*Mount Moriah Cemetery v. Moritz*,
  1991 WL 50149 (Del. Ch. Apr. 4, 1991),
  *aff'd*, 599 A.2d 413 (Del. 1991) ........................................................................................ 9, 10

*Potter v. Hughes*,
  546 F.3d 1051 (9th Cir. 2008) ................................................................................................. 6

*Rich ex rel. Fuqi Intern., Inc. v. Yu Kwai Chong*,
  66 A.3d 963 (Del. Ch. 2013) ................................................................................................... 7

*Shaev v. Baker*,
  Case No. 16-CV-5541-JST (N.D. Cal.) .................................................................................. 5

*Simmonds v. Credit Suisse Sec.s (USA) LLC*, 638 F.3d 1072 (9th Cir. 2011) ............................. 6

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) ............................................................................................. 6, 7

*Teamsters Union 25 Health Services & Insurance Plan v. Baiera*,
    119 A.3d 44 (Del. Ch. 2015) ............................................................................................ 11

*In re Wells Fargo & Company Shareholder Derivative Litigation*,
    Lead Case No. 3:16-cv-05541-JST (N.D. Cal.) ............................................................. 5, 8

*Zucker v. Hassell*,
    2016 WL 7011351 (Del. Ch. 2016) ..................................................................................... 9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 20, 2018, at 2:00 p.m., or as soon after as the matter may be heard, Defendants National General Insurance Company and National General Holdings Corp. (together, "National General") will move this Court pursuant to Federal Rule of Civil Procedure 23.1 for an order dismissing the Amended Complaint (Dkt. 19) (the "Amended Complaint" or "AC").

National General seeks an order dismissing the Amended Complaint for failure to comply with Federal Rule of Civil Procedure 23.1.  The motion is based on this Notice; the Memorandum of Points and Authorities, *infra*; the accompanying Proposed Order; the Court's files; and argument of counsel at the hearing.

## ISSUE TO BE DECIDED

1. Does Plaintiff lack standing pursuant to Federal Rule of Civil Procedure 23.1 to bring this shareholder derivative action on behalf of Wells Fargo, given that Plaintiff does not allege particularized facts, as required by the governing law of Delaware, showing that the Board's decision is not protected by the business judgment rule?

## PRELIMINARY STATEMENT

The Board of Directors of Wells Fargo & Company ("Wells Fargo" or the "Company"), following a recommendation from its Demand Review Committee, determined not to pursue Plaintiff's demands that Wells Fargo commence this litigation against National General.  From 2011 until 2016, National General provided insurance and tracking services to Wells Fargo's collateral protection insurance program as an outside vendor.  By a demand letter submitted to the Wells Fargo Board of Directors (the "Board") on October 30, 2017, Wells Fargo shareholder Robert A. Feuer alleged, *inter alia*, that in the course of that relationship, National General aided and abetted breaches of fiduciary duty by certain Wells Fargo board members.  Feuer demanded that the Board bring suit. After a thorough investigation, the Board refused.  Feuer then filed this derivative suit, purporting to allege that same aiding and abetting claim against National General on behalf of Wells Fargo. However, Feuer's claim against National General must be dismissed because a derivative claim is

improper where Wells Fargo's Board has already considered and refused Feuer's demand that the Company file suit on these facts.

By making a demand for suit on the Board, Feuer conceded that the Board was disinterested and independent for the purposes of considering his demand. And in considering his demand, the Board conducted a complete and thorough investigation, including by searching committee materials and director emails, evaluating ongoing litigation, and reviewing ongoing remedial efforts, which include the engagement of outside counsel and a consulting firm to investigate CPI issues. AC, Ex. D at 3-4. Based on this investigation, the Board concluded that litigation was not in the best interests of the Company. That determination, made in the exercise of the Board's business judgment, is entitled to deference and cannot be second-guessed by Feuer.

In an attempt to overcome the Board's refusal, Feuer makes three unsupported and unsupportable claims: (i) that the Board was conflicted, (ii) that the Board acted unreasonably, and (iii) that the Board acted in bad faith. None of these claims provide a basis for disturbing the Board's business judgment.

*First*, Feuer alleges that this Court should disregard the Board's decision because only a Board that had "conducted a half-hearted and conflicted investigation would conclude that [his claims] could not be made out." AC at ¶ 211. However, by making a demand for suit on the Board, Feuer conceded that the Board was disinterested and independent for the purposes of considering his demand and cannot now claim that the Board is "conflicted."

*Second*, Feuer claims that the Board "did not act reasonably" because its investigation of his Demands "amounted to a sham" and was "shallow in its execution." *Id.* at ¶¶ 7, 177, 188. However, an independent board's business judgment may only be disturbed if a plaintiff alleges particularized facts showing gross negligence in the board's process. Feuer has not, and cannot, do so here.

*Third and finally*, Feuer claims that the Board "did not respond in good faith" to his demands. *Id.* at ¶ 180. Again, Feuer fails to allege particularized facts showing bad faith and instead improperly relies solely on his disagreement with the Board's ultimate conclusion. *See id.* at ¶ 211 (arguing that because his demands "are real, substantial, and pervasive," only a flawed investigation could result in refusal).

2
DEFENDANT NATIONAL GENERAL'S MOTION TO DISMISS
Case No. 3:18-cv-02866-JST

The decision of whether to bring suit on behalf of a corporation "is a quintessential exercise of business judgment, involving as it does a complex array of costs (both monetary and otherwise), potential benefits, and the risk of uncertain outcomes. Hence, a corporation's board of directors should have the initial opportunity to decide whether it must, in the exercise of its fiduciary duties, seek rectification of alleged wrongs." *Friedman v. Maffei*, 2016 WL 1555331, at *8 (Del. Ch. Apr. 13, 2016) (internal citations and quotation marks omitted). The Board of Wells Fargo refused Feuer's demand to bring suit on these facts, and its judgment is entitled to deference. As such, Feuer's claim of aiding and abetting breaches of fiduciary duty against National General should be dismissed.

## STATEMENT OF FACTS

While the Amended Complaint purports to allege several breaches of duty by Wells Fargo board members, the only factual allegations relevant to the claim against National General are those regarding Wells Fargo's Collateral Protection Insurance program (the "CPI Program"). AC ¶¶ 111-42. National General had ***no*** involvement in any of the other issues identified by Feuer, and Feuer does not allege otherwise.

Pursuant to Wells Fargo's CPI Program, when a borrower purchased an automobile with a loan from Wells Fargo, Wells Fargo required the borrower to provide proof that he or she had insurance protecting Wells Fargo's interest in the car. *Id.* ¶¶ 113, 138. If a customer failed to provide proof of insurance, or allowed a policy to lapse without providing proof of subsequent coverage, Wells Fargo's contract with the customer permitted Wells Fargo to obtain a form of insurance known as collateral protection insurance ("CPI") and to include the premium for CPI on the purchaser's monthly loan bill. *Id.* ¶¶ 112-13. If Wells Fargo then became aware that the borrower had acquired proper coverage, Wells Fargo "had a process to cancel the [CPI] and to refund premiums." *Id.* ¶ 138.

Wells Fargo directed its CPI program, which it operated with outside service providers, including—from 2015 until the CPI program ended in September 2016—National General. *Id.* ¶¶ 53, 114. National General provided CPI and tracking services to Wells Fargo, which included contacting borrowers and advising Wells Fargo when a borrower provided proof of insurance. Wells Fargo determined if borrowers' accounts would be transmitted to National General for tracking services, directed National General regarding its review of borrowers' accounts, placed CPI underwritten by

National General on borrowers' accounts, and imposed and collected CPI payments from borrowers.

On July 27, 2017, the New York Times reported that consultants retained by Wells Fargo determined that Wells Fargo had charged approximately 800,000 customers for unnecessary CPI policies before the program was discontinued in 2016. *Id.* ¶ 119. As a result, on October 30, 2017, Feuer submitted his Supplemental Demand[1] to the Wells Fargo Board. The Supplemental Demand detailed Feuer's understanding of the CPI issues that were the topic of the New York Times article and requested that the Board investigate and "commence litigation against any and all persons and entities who are responsible for the transgressions, violations of law, and damages sustained by the Company as a result of the misconduct summarized in this letter as well as the related cover-up." AC, Ex. B at 8.

Upon receipt of Feuer's Supplemental Demand, the Board referred the issue to the Demand Review Committee ("Demand Review Committee" or "Committee"), an independent committee of the Board. AC, Ex. D at 2. The Committee, assisted and advised by counsel Shearman & Sterling LLP ("Shearman & Sterling"), undertook an extensive demand review process over several months. The Committee reviewed the status of ongoing and potential litigation in multiple forums, including multiple putative consumer class actions, derivative litigation, review and inquiries by federal regulatory entities, inquiries by state-level agencies, and potential claims by employees against the Company, or by the Company against National General. *Id.* at 4. The Committee also reviewed the full history of CPI issues, including the Company's self-identification and self-reporting of issues related to the CPI program, the complete cessation of new CPI placements as of September 2016, and the Company's formation of a management steering committee to address CPI issues. *Id.* at 3. Shearman & Sterling also searched Board and Board committee materials and director emails to identify any prior escalation of CPI issues. *Id.* The Committee also reviewed in detail the remedial actions undertaken by the Company, including the engagement of outside counsel and a consulting firm to investigate the cause of any problems and assist the Company in developing its customer

---

[1] On December 12, 2016, Feuer submitted an Initial Demand for litigation to the Board, focused on allegations of improper "cross-selling" of services to customers. As discussed above, National General was not involved in any activities related to the alleged cross-selling.

remediation plan (which is subject to regulatory oversight). Finally, the Committee considered the extensive changes to the division responsible for CPI, Dealer Services, including its reorganization and changes in its leadership and its improved procedures for the management of risk and compliance. *Id.* at 3.

At the conclusion of the Committee's investigation, it presented its findings to the Board. The Board weighed the Committee's findings and evaluated potential claims, including all those claims identified in the Supplemental Demand. It further weighed the substantial costs of litigation, the long-term strategic effect that pursuing litigation would have on the Company, the effect on employee morale, and the effect on recruitment and retention of employees. *Id.* at 4, 5. After "careful deliberation" of these factors and others, the Board made the unanimous decision not to initiate litigation with respect to the CPI issues and so informed Feuer. *Id.* at 2.

Feuer filed his initial complaint on May 16, 2018 but failed to name National General as a defendant. Feuer amended his complaint on June 20, 2018, adding, *inter alia*, National General and alleging that certain officers and/or directors of Wells Fargo had committed several breaches of fiduciary duty, AC ¶¶ 219-63, and that National General had aided and abetted some of those breaches, *id.* ¶¶ 264-73. To address the Board's considered denial of both his Initial and Supplemental Demands for litigation, Feuer alleged that the Board did not act reasonably or in good faith by engaging Shearman & Sterling to assist in the Committee's investigation. *Id.* ¶ 179, 177. Feuer argued that because Shearman & Sterling represents Wells Fargo Board members in a separate action,[2] the firm was conflicted. *Id.* ¶¶ 182-3. Feuer alleged that the Board's decision must have been made in bad faith because his claims are "real," and "[o]nly those who have conducted a half-hearted and conflicted investigation would conclude that [his claims] could not be made out." *Id.* ¶ 211.

## **LEGAL STANDARD**

National General moves to dismiss the sole cause of action alleged against it, for aiding and abetting breaches of fiduciary duty, on the ground that Feuer has not adequately alleged that the

---

[2] Shearman & Sterling represents Wells Fargo Board members in *In re Wells Fargo & Company Shareholder Derivative Litigation*, Lead Case No. 3:16-cv-05541-JST (N.D. Cal.), *Shaev v. Baker*, Case No. 16-CV-5541-JST (N.D. Cal.). National General is not a party to that action.

Board's refusal of his Demands was wrongful. Feuer brings his claims as derivative claims, seeking to "enforce a *corporate* cause of action against officers, directors, and third parties." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991), quoting *Ross v. Bernhard,* 396 U.S. 531, 534 (1970). The decision of whether to bring a suit on behalf of the corporation usually rests with the board of directors, as the claim belongs to the corporation. *Aronson v. Lewis*, 473 A.2d 805, 811-12 (Del. 1984). As such, where a suit purports to bring a derivative claim, under Federal Rule of Civil Procedure 23.1 and applicable Delaware law, "[t]he complaint [must] . . . state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority, and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or making the effort."[3]

Under Delaware law, by making a demand on the board, a plaintiff "concedes that the board is disinterested and independent" so that the board's decision to refuse the demand "is subject to the business judgment rule." *Andersen v. Mattel, Inc.*, 2017 WL 218913, at *3 (Del. Ch. 2017).[4] "The burden is on the party challenging the decision to establish facts rebutting the presumption" of business judgment deference. *Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990), quoting *Aronson*, 571 A.2d at 812. As such, to survive a motion to dismiss under Rule 23.1 where a demand has been made and refused, a plaintiff must plead "particularized facts which, taken as true, create a reasonable doubt that the board's investigation complied with its duty of loyalty—that is, was undertaken in good

---

[3] The requirements of Rule 23.1 apply equally to demands that a company's board of directors bring suit against a third party. *See Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988) (third-party auditor had standing to bring demand-related defenses); *see also Simmonds v. Credit Suisse Sec.s (USA) LLC*, 638 F.3d 1072, 1097 n.22 (9th Cir. 2011) ("The Delaware Supreme Court has thoroughly and persuasively explained why third parties have standing to raise defenses based on the shareholder's failure to comply with demand requirement."), *rev'd on other grounds*, *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 223 (2012).

[4] Because Wells Fargo is a Delaware corporation, Delaware Rule of Chancery 23.1 controls the question of whether the Board's refusal of Feuer's demand was a valid exercise of its business judgment. *See Furman v. Walton*, 2007 WL 1455904, *1 (N.D. Cal. 2007); *Potter v. Hughes*, 546 F.3d 1051, 1054 n. 1 (9th Cir. 2008). "Federal Rule 23.1 . . . is either identical to or consistent with Chancery Court Rule 23.1." *Asbestos Workers Local 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *12 (Del. Ch. 2015).

faith—or with its duty of care—that is, was not grossly negligent." *Ironworkers District Council of Philadelphia & Vicinity Retirement & Pension Plan v. Andreotti*, 2015 WL 2270673, at *25 (Del. Ch. May 8, 2015). A plaintiff must "plead wrongful demand refusal allegations with particularized facts. Thus, [v]ague or conclusory allegations do not suffice." *Andersen*, 2017 WL 218913, at *3, quoting *Ironworkers District Council*, 2015 WL 2270673, at *25. "The ultimate conclusion of the [committee] . . . is *not* subject to judicial review." *Spiegel*, 571 A.2d at 778 (emphasis in original).

## ARGUMENT

Feuer's Amended Complaint does not allege particularized facts raising a reasonable doubt that the Board's refusal of his Supplemental Demand was a valid exercise of its business judgment. Feuer does not allege particularized facts showing that the Board's investigation was not undertaken in good faith or was grossly negligent. *See Ironworkers District Council*, 2015 WL 2270673 at *25. Because Feuer does not—and cannot—allege that the Board acted with gross negligence or in bad faith, the Board's decision not to bring suit is entitled to business judgment deference, and the Amended Complaint should be dismissed with prejudice.

### I. THE BOARD WAS DISINTERESTED AND INDEPENDENT FOR THE PURPOSE OF CONSIDERING FEUER'S SUPPLEMENTAL DEMAND

By making his Supplemental Demand upon the Board, "the plaintiff concedes that the board is disinterested and independent for purposes of responding to the demand." *Andersen*, 2017 WL 218913, at *3; *Friedman*, 2016 WL 1555331, at *8 ("The Delaware Supreme Court has held that a plaintiff who makes demand on the board concedes that the board had the requisite independence and disinterest to evaluate the demand objectively."); *Ironworkers District*, 2015 WL 2270673, at *24 ("A shareholder plaintiff, by making demand upon a board before filing suit, tacitly concedes the independence of a majority of the board to respond." ); *Spiegel*, 571 A.2d at 777 ("By electing to make a demand, a shareholder plaintiff tacitly concedes the independence of a majority of the board to respond."); *Rich ex rel. Fuqi Intern., Inc. v. Yu Kwai Chong*, 66 A.3d 963, 976 (Del. Ch. 2013) ("By making a litigation demand on a board of directors, a stockholder concedes that the board is able to evaluate the demand, free from concerns of conflicts of interest or lack of independence."); *Kamen*, 500 U.S. at 105 ("[R]eceipt of demand makes it crystal clear to the directors of a Delaware

corporation that the decision whether to commit the corporation to litigation lies solely in their discretion.").

Feuer now purports to question the Board's independence on the basis that Shearman & Sterling, the independent counsel engaged by the Demand Review Committee, represented certain Individual Defendants in a separate action. AC ¶ 189. However, by submitting his request to that Board, Feuer cannot now question its independence under well-established Delaware law.[5]

In any event, the retention of Shearman & Sterling does not discredit the Board's evaluation of the Supplemental Demand as against National General. Feuer claims that Shearman & Sterling's representation of some of the Individual Defendants in the Consolidated Action conflicts the firm from reasonably investigating his demand for litigation against those same Individual Defendants. *Id.* ¶ 201. That logic, even if credited as to those Individual Defendants, *does not hold for National General*. In fact, National General is not even a party to the Consolidated Action, and there are no allegations in the Consolidated Action related to CPI. *See In re Wells Fargo & Co. Shareholder Deriv. Litig.*, Lead Case No. 3:16-cv-05541-JST, Dkt. 83 (N.D. Cal.). Therefore, Feuer does not—and cannot—allege any particularized facts as to why Shearman & Sterling would be biased or conflicted in evaluating a potential claim *against National General*.

## II. THE BOARD'S CONSIDERATION OF THE SUPPLEMENTAL DEMAND IS ENTITLED TO BUSINESS JUDGMENT DEFERENCE

Having conceded that the Board was disinterested and independent, to survive this motion to dismiss Feuer must allege "particularized facts that raise a reasonable doubt as to whether the board's decision to refuse the demand was the product of valid business judgment." *Friedman*, 2016 WL 1555331, at *8. Those particularized facts must "raise a reasonable doubt that (1) the board's decision to deny the demand was . . . not grossly negligent; or (2) the board acted in good faith . . . . Otherwise,

---

[5] In addition, while Feuer alleges Shearman & Sterling "did not merely assist" and "conducted whatever investigations were carried out to support the Board's eventual rejection of the Initial and Supplemental Demands," AC ¶ 189, the Demand Refusal Letters flatly contradict such a process. The Board was clear that "[t]he Demand Review Committee undertook this review in the first instance and was *assisted* in its review by Shearman & Sterling." AC, Ex. D at 3 (emphasis added). As such, even if Shearman & Sterling *were* conflicted, it is hornbook law that where "the Board did not delegate its investigation responsibilities to counsel," any conflicts of counsel are irrelevant. *See Baron v. Siff*, 1997 WL 666973, at *2 n.13 (Del. Ch. Oct. 17, 1997).

the decision of the board is entitled to deference as a valid exercise of its business judgment." *Andersen*, 2017 WL 218913, at *3, quoting *Friedman*, 2016 WL 1555331, at *9 (internal quotation marks omitted). Here, Feuer has not alleged particularized facts demonstrating that the Board was either unreasonable or acted in bad faith.

**A.  Feuer Fails To Adequately Allege Gross Negligence**

Allegations of shortcomings in the Board's process "must rise to the level of gross negligence" to be found unreasonable. *Mount Moriah Cemetery v. Moritz*, 1991 WL 50149, at *4 (Del. Ch. Apr. 4, 1991), *aff'd*, 599 A.2d 413 (Del. 1991). "[T]he burden to plead gross negligence is a difficult one," *Zucker v. Hassell*, 2016 WL 7011351, at *7 (Del. Ch. Nov. 30, 2016), quoting *Espinoza ex rel. JP Morgan Chase & Co. v. Dimon*, 124 A.D.3d 33, 36 (Del. 2015), because the business judgment rule "accords directors the presumption that they acted on an informed basis." *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991). A board is not grossly negligent if it "properly informed itself of material information reasonably available to it before refusing the demand." *Andersen*, 2017 WL 218913, at *4. A grossly negligent investigation is one in which "the board did not investigate at all or pursued 'such an inadequate investigation, in light of the seriousness of the demand, that a court may reasonably infer a breach of the duty of care.'" *Id.*, quoting *Ironworkers District Council*, 2015 WL 2270673, at *26.

Here, Feuer does not—and cannot—allege that the Board's investigation into the Supplemental Demand was grossly negligent. The Demand Review Committee reviewed the status of all ongoing related litigation, including multiple putative consumer class actions, and potential claims against the insurance underwriter. AC, Ex. D at 2, 4. The Committee also reviewed the history of Wells Fargo's CPI program, including the Company's cessation of CPI placements as of September 2016, the Company's self-identification of issues, and prior Board materials identifying "any prior escalation of the CPI Issues and . . . more recent reporting to the Board on the CPI issue." *Id.* at 3. The Committee also evaluated remedial actions already in place and the Company's engagement of outside counsel and a consulting firm to investigate and advise with respect to CPI issues. *Id.* The Committee's findings were then presented to the entire Board, which determined in the exercise of their business judgment that litigation was not in the Company's best interest. *Id.* at 5.

Feuer criticizes this process as "shallow," AC ¶ 188, which it clearly was not. However, even if the process were "shallow," that does not rise to an allegation of gross negligence, as required to override the Board's business judgment. *See Andersen*, 2017 WL 218913, at *4 ("A grossly negligent investigation is one where the board did not investigate at all or pursued . . . an inadequate investigation in light of the seriousness of the demand."). Feuer may disagree with the process undertaken by the Committee, but there is no "prescribed procedure" the Board was required to follow. *Levine*, 591 A.2d at 214. For instance, Feuer claims that the Board did not specifically address several arguments raised in his Supplemental Demand. AC ¶¶ 200, 202, 205-07. However, the Board's refusal need not "contain a point-by-point response to all allegations in the demand letter." *Baron*, 1997 WL 666973, at *2. Courts will not second-guess the choices made by the board committee tasked with conducting and overseeing the investigation into the matters raised in a demand. *See, e.g.*, *Mount Moriah Cemetery*, 1991 WL 50149, at *4 ("Inevitably, there will be potential witnesses, documents and other leads that the investigator will decide not to pursue."). In an investigation into a demand, "reasonable minds may differ" as to what form the investigation should take. *Id.* "This is especially so in a case such as this, where the challenged conduct covers a period of more than ten years." *Id.* As such, even to the extent Feuer has raised such disagreements with the Board's process, those disagreements fall far short of allegations of gross negligence and do not provide the basis for disturbing the Board's business judgment.

**B.   Feuer Fails To Adequately Allege Bad Faith**

Feuer has also failed to allege particularized facts raising a reasonable doubt that the Board acted in good faith in refusing his Demands. Because Feuer has conceded the Board's independence and disinterest by making his Demands, "the board can only breach its duty of loyalty by acting in bad faith." *Friedman*, 2016 WL 1555331, at *11. Demonstrating that the Board acted in bad faith "goes far beyond showing a questionable or debatable decision on their part." *Andersen*, 2017 WL 218913, at *5. To adequately allege that the Board wrongfully refused Feuer's demand in bad faith, the "complaint must plead particularized facts showing that 'the directors . . . acted with scienter, *i.e.,* with a motive to harm, or with indifference to harm that will necessarily result from the challenged decision—here, that decision being rejection of the Plaintiff's demand.'" *Id.*, quoting *Ironworkers*

*District Council*, 2015 WL 2270673, at *26. "This is a high pleading standard." *Teamsters Union 25 Health Services & Insurance Plan v. Baiera*, 119 A.3d 44, 63 (Del. Ch. 2015).

In determining whether scienter is adequately alleged, "[t]he Court only considers a complaint's underlying claims for a narrow purpose—to determine whether the merits of those claims are so overwhelmingly obvious that the board's decision not to pursue them must have been made in bad faith." *Friedman*, 2016 WL 1555331, at *11. Refusal of the demand must have been "so inexplicable that a court may reasonably infer that the directors must have been acting for a purpose unaligned with the best interest of the corporation." *Ironworkers District Council of Philadelphia*, 2015 WL 2270673, at *27.

Feuer's allegations do not meet this high pleading standard. *First*, Feuer has not sufficiently pled the Board's bad faith because he makes only conclusory statements expressing disagreement with the Committee's decision. For instance, Feuer alleges "[o]nly those who have conducted a half-hearted and conflicted investigation would conclude that a case of intentional misconduct or gross negligence could not be made." AC ¶ 211; see *id.* ¶¶ 190, 194, 200 (alleging the Board must have "conscious[ly] disregard[ed]" certain evidence to reach its conclusion). These "conclusory, *ipse dixit,* assertions are inconsistent with the requirements of Rule 23.1." *Grimes v. Donald*, 673 A.2d 1207, 1220 (Del. 1996) (affirming dismissal when complaint "generally asserted that the refusal could not have been the result of an adequate, good faith investigation since the Board decided not to act on the demand."), overruled on other grounds, *Brehm v. Eisner*, 746 A.D.2d 244, 253 (Del. 2000).

These arguments must fail, as "[i]t is clear that mere disagreement with the Committee's ultimate conclusion, as well as its subsidiary conclusions leading thereto, will be insufficient to raise a reasonable doubt that the Board acted in good faith and on an informed basis." *Ironworkers District Council of Philadelphia*, 2015 WL 2270673, at *27. The mere fact that "Plaintiff disagrees with the Committee's conclusions is simply insufficient to raise a reasonable doubt that the Board's adoption of the Committee's recommendation was made in good faith." *Id.* at 30.

*Second*, Feuer has not sufficiently pled the Board's bad faith because he fails to address the many reasons cited by the Board for declining to pursue litigation. In evaluating allegations of bad faith, the Court must look to "other relevant factors considered by the board—e.g., whether the costs

of pursuing the claims outweigh the expected recovery" to determine whether the ultimate decision was made in good faith. *Friedman*, 2016 WL 1555331, at *12. *Friedman v. Maffei*, 2016 WL 1555331 (Del. Ch. 2016), and *Andersen v. Mattel, Inc.*, 2017 WL 218913 (Del. Ch. 2017), are particularly instructive. In both cases, plaintiffs' claims were dismissed for failure to plead wrongful demand refusal when the boards' refusal letters cited the high cost of litigation and potential harm to the long-term strategic interests of the company. *Friedman*, 2016 WL 1555331, at *12; *Andersen*, 2017 WL 218913, at *7. The *Andersen* Court found the Board's consideration of these and other similar factors warranted dismissal:

> The Refusal Letter, like the refusal letter in *Friedman*, cites the high cost of litigation. It also explains that the board believed that this type of litigation would be an unnecessary distraction at a time when senior management was attempting to turn around the company's performance and could have an adverse impact on executive recruitment and retention. Plaintiff thus fails to allege that the Mattel board improperly refused demand in this case, and the Complaint is dismissed under Rule 23.1.

*Andersen*, 2017 WL 218913, at *7.

Here, the Board considered several significant ways in which the proposed litigation would affect Wells Fargo's long-term interests. *First*, the Board considered the cost of the litigation proposed by Feuer. *See* AC, Ex. D (Supp. Demand Refusal Ltr.) at 4 (the Board considered "[t]he substantial costs of litigation, including the expense of advancing fees to defendants and the possibility of not recouping those payments."). *Second,* the Board "took into account that hiring outside counsel to pursue such claims would be a significant expense, which could duplicate the efforts of the Company's counsel in investigating the CPI matter, responding to regulatory inquiries, and defending the pending litigation against the Company." *Id.* at 5. *Third*, the Board considered "[t]he effect that pursuing litigation would have on operations as a result of the diverted time and attention of management and employees." *Id.* at 4. *Fourth*, the Board considered "[t]he effect on employee morale and recruitment and retention of employees." *Id.* at 5. *Fifth*, the Board considered "the potential negative consequences that instituting and pursuing litigation would have on the Company's position with respect to civil litigation brought by third parties, as well as regulatory investigations by various federal and state authorities and agencies." *Id.* at 5. *Sixth*, the Board

considered ongoing remediation efforts to rectify the issues identified in the Demands and how they may obviate the need for litigation or be impeded by it. *Id.* at 2, 3, 5.[6]

Each of these considerations is evidence that the Board exercised its business judgment in good faith. As the *Andersen* and *Friedman* Courts found, costs and the distraction to management are valid considerations for a board. *See* WL 218913, at *6; 2016 WL 1555331, at *12. Similarly, recruitment, retention, and morale affect the long-term strategic interests of the Company, and therefore consideration of those factors also demonstrates that the Board acted in good faith. *See Andersen*, 2017 WL 218913, at *7 (finding no showing of bad faith where "the board believed that this type of litigation . . . could have an adverse impact on executive recruitment and retention"); *Ironworkers District Council*, 2015 WL 2270673, at *23 (holding that the board did not act in bad faith when it rejected the shareholder demand based in part on finding that litigation would be a "significant distraction and impair[] . . . [the] morale . . . [of] directors, officers, and employees of the Company"); *Furman*, 2007 WL 1455904, *1 (finding no bad faith where the board considered the effects of pursuing a demand on pending litigation). Indeed, Feuer does not dispute that the Board considered these relevant factors; instead, he simply ignores the multitude of reasons the Board provided for its decision and disagrees only with the Board's ultimate conclusion. That is plainly insufficient to disturb the exercise of the Board's business judgment. *Ironworkers District Council*, 2015 WL 2270673, at *27 ("mere disagreement with the Committee's ultimate conclusion, as well as its subsidiary conclusions leading thereto, will be insufficient to raise a reasonable doubt that the Board acted in good faith").

---

[6] The Board also weighed "[t]he ability of individuals to satisfy judgments and the difficulties of collecting on a judgment," the Company's exculpation clause relevant to directors, and the cessation of CPI placements. *Id.* at 4.

13

# **CONCLUSION**

For the reasons discussed above, the Amended Complaint fails to meet the burden of pleading with specificity that the Board wrongfully refused Feuer's demands. Accordingly, Feuer's claim against National General should be dismissed.

Dated: September 7, 2018

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/ Corey Worcester*
Michael Carlinsky
michaelcarlinsky@quinnemanuel.com
Jane M. Byrne
janebyrne@quinnemanuel.com
Corey Worcester
coreyworcester@quinnemanuel.com
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Robert P. Vance, Jr. (Bar No. 310879)
bobbyvance@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant National General Insurance Company and National General Holdings Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2018, I electronically filed the foregoing document entitled NATIONAL GENERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

Dated: September 7, 2018       By:   */s/ Corey Worcester*
                                     Corey Worcester