1  Richard M. Heimann (063607)
   *rheimann@lchb.com*
2  Katherine C. Lubin (259826)
   *kbenson@lchb.com*
3  Michael K. Sheen (288284)
   *msheen@lchb.com*
4  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
5  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
6  Facsimile:  (415) 956-1008

7  *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
   *Association of Colorado in In re Wells Fargo & Co.*
8  *S'holder Derivative Litig., No. 3:16-cv-05541-JST*

9  Maya Saxena (*Pro hac vice*)
   *msaxena@saxenawhite.com*
10 Joseph E. White, III (*Pro hac vice*)
   *jwhite@saxenawhite.com*
11 Lester R. Hooker (241590)
   *lhooker@saxenawhite.com*
12 Adam D. Warden (*Pro hac vice*)
   *awarden@saxenawhite.com*
13 Dianne M. Pitre (286199)
   *dpitre@saxenawhite.com*
14 SAXENA WHITE P.A.
   7777 Glades Road, Suite 300
15 Boca Raton, FL 33434
   Telephone: (561) 394-3399
16 Facsimile: (561) 394-3382

17 *Attorneys for Co-Lead Plaintiff The City of Birmingham*
   *Retirement and Relief System in In re Wells Fargo & Co.*
18 *S'holder Derivative Litig., No. 3:16-cv-05541-JST*

19 [Additional Counsel on Signature Page]

20              UNITED STATES DISTRICT COURT

21            NORTHERN DISTRICT OF CALIFORNIA

22

   R. A. FEUER,                          | Case No. 4:18-cv-02866-JST
23
                    Plaintiff,           | **RESPONSE TO JOINT MOTION TO
                                         | DISMISS THE AMENDED
          v.                             | COMPLAINT ON THE GROUNDS
                                         | OF *RES JUDICATA*; MOTION FOR
   JOHN D. BAKER, II, et al.,            | DISGORGEMENT**

                    Defendants.          | The Honorable Jon S. Tigar
                                         | Hearing Date:     April 1, 2021
                                         | Hearing Time:     2:00 p.m.

1

**TABLE OF CONTENTS**

2

**Page**

3      PRELIMINARY STATEMENT...................................................................................... 1

4      RELEVANT BACKGROUND .................................................................................... 2

       A.     The CPI Derivative Actions................................................................... 2

5      B.     Settlement of the State CPI Action and Feuer's Appeal ......................... 3

6      C.     Feuer's Agreement with the Bank to Resolve His Appeal in Exchange for a
              Personal Payoff ................................................................................... 4

7      ARGUMENT ......................................................................................................... 6

8      I.     Feuer and Wells Fargo's Joint Motion to Dismiss Constitutes a "Settlement,"
              "Voluntary Dismissal," or "Compromise" Requiring Notice to Shareholders Under
9             Rule 23.1. ............................................................................................ 6

10     II.    The Feuer Settlement Was Structured to Avoid This Court's Scrutiny............................ 7

11     III.   The Court Should Disgorge from Feuer and His Counsel the $1.5 Million They
              Extorted from Wells Fargo. .................................................................... 8

12            A.     Feuer and His Counsel Acted in Bad Faith by Violating Their Duty to
                     Serve the Bank's (and Its Shareholders') Interests. ........................... 9

13            B.     The $1.5 Million Payment to Feuer and His Counsel Was Not
                     Compensation for Causing a Reduction in the Fee Award or Proposing
14                   Revisions to the Notice in the State CPI Action. ................................ 12

15     CONCLUSION ...................................................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Barnes v. FleetBoston Fin. Corp.*,
  2006 WL 6916834 (D. Mass. Aug. 22, 2006)..........................................................................10

*Bourgeois v. Valero Energy Corp.*,
  2016 WL 7036788 (W.D. La. Nov. 7, 2016), *report and recommendation adopted*,
  2016 WL 7041636 (W.D. La. Dec. 1, 2016) ...............................................................................6

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991)......................................................................................................................9

*Dunk v. Ford Motor Co.*,
  48 Cal. App. 4th 1794 (1996) ...................................................................................................12

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001).......................................................................................................9

*Mark v. Spencer*,
  166 Cal. App. 4th 219 (2008) ...................................................................................................13

*Pearson v. Target Corp.*,
  968 F.3d 827 (7th Cir. 2020)...........................................................................................9, 11, 12

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946) ....................................................................................................................9

*Woodland Hills Residents Ass'n, Inc. v. City Council of L.A.*,
  23 Cal. 3d 917 (1979) ...............................................................................................................13

*Young v. Higbee Co.*,
  324 U.S. 204 (1945) ............................................................................................................10, 11

**Rules**

Fed. R. Civ. P. 23(e)(5)...................................................................................................................10

Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.................................................................10

Fed. R. Civ. P. 23.1(c)................................................................................................................6, 14

Fed. R. Civ. P. 41(a)(2)....................................................................................................................6

**Other Authorities**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009)...............10

- ii -

1  The Fire & Police Pension Association of Colorado and The City of Birmingham Retirement

2 and Relief System (the "Sales Practices Plaintiffs"), in their capacity as Wells Fargo shareholders

3 and Court-appointed co-lead plaintiffs in the related action, *In re Wells Fargo & Co. Shareholder*

4 *Derivative Litigation*, No. 4:16-cv-05541-JST (N.D. Cal.) (the "Sales Practices Action"),

5 respectfully submit this response to the joint motion by Nominal Defendant Wells Fargo & Co.

6 ("Wells Fargo" or the "Bank") and Plaintiff R.A. Feuer to dismiss the amended complaint in this

7 action, and move to disgorge Feuer and his counsel of the $1.5 million payment they obtained

8 through Feuer's extortionate "settlement" with the Bank to resolve his objection to the settlement

9 in *In re Wells Fargo & Co Auto Insurance Derivative Litigation*, No. CGC 17-561118 (S.F.

10 Super.) (the "State CPI Action").

11 **PRELIMINARY STATEMENT**

12  While Sales Practices Plaintiffs agree this case is now barred by *res judicata* due to the

13 final judgment entered in the related State CPI Action, they object to Feuer's attempt to

14 circumvent the requirements of Federal Rule of Civil Procedure 23.1.  Regardless of its

15 characterization as a "joint motion to dismiss," Feuer and Wells Fargo's motion plainly

16 constitutes a "settlement," "voluntary dismissal," or "compromise" of this derivative action,

17 requiring at minimum shareholder notice and judicial approval under the Rule.

18  Further, the reason for Feuer's tactic is both transparent and concerning: Feuer attempts to

19 avoid judicial and shareholder scrutiny of an agreement through which he and his counsel have

20 personally profited in the amount of $1.5 million to forgo Feuer's appeal of the superior court's

21 denial of his objection in the State CPI Action, at the expense of other Wells Fargo shareholders.

22 Impliedly admitting that settlement of his claims requires court approval, Feuer initially sought

23 approval of his agreement with the Bank in the State CPI Action, but the superior court

24 tentatively denied his request after determining the agreement should have been submitted for

25 approval in *this action*.  Feuer responded by promptly withdrawing his request for judicial

26 approval.  And rather than heeding that court's advice and refashioning his agreement for

27 approval by this Court, Feuer now asserts "no court approval is required" at all.[1]  Feuer's

[1] ECF No. 137-4, Ex. I at 4.

RESPONSE TO JOINT MOTION TO DISMISS;
MOTION FOR DISGORGEMENT
CASE NO. 4:18-CV-02866-JST

1  audacious bait-and-switch raises a fundamental question:  Why is he so determined not to submit

2  his settlement to judicial scrutiny?

3          The answer is obvious: Feuer's actions in procuring a payment from Wells Fargo

4  constitute classic "objector blackmail," the practice by which certain shareholders—purporting to

5  serve the interests of their fellow investors—lodge objections to class or derivative settlements,

6  only to later abandon those objections for hefty personal payoffs from class counsel or, as here,

7  the Bank.  Recognizing that the pendency of his appeal in the State CPI Action prevented Wells

8  Fargo from receiving the $240 million owed to it under the settlement in the Sales Practices

9  Action, Feuer extracted $1.5 million from the Bank to resolve the appeal and in turn to seek

10  dismissal of this case.  Feuer's agreement with Wells Fargo entailed no modification of the

11  settlement of the State CPI Action—the ostensible purpose of his appeal—and afforded no benefit

12  to the Bank beyond the removal of an obstacle *Feuer himself had created*.  For Feuer and his

13  counsel, this entire process has been "heads I win, tails you lose."  This Court should not

14  countenance their attempt to game the system, and waste judicial resources, for personal benefit.

15          Because Feuer and his counsel have sold out the interests of other shareholders and

16  attempt to use a sham settlement as a basis to dismiss this case, this Court should order

17  disgorgement of the $1.5 million payment they obtained from the Bank.  Moreover, the Court's

18  reasoning in a recent decision denying sanctions against an objector who similarly extorted a

19  hefty payment from the Bank does not apply here.  Unlike in that situation, where the Court

20  refrained from disturbing the objector settlement because it occurred in an action not before the

21  Court, the payment to Feuer and his counsel is being made in connection with dismissal of *this*

22  *case*, a fact the state court acknowledged.  Accordingly, it is well within this Court's equitable

23  powers to order disgorgement.

24                              **RELEVANT BACKGROUND**

25  **A.      The CPI Derivative Actions**

26          Beginning in September 2017, certain plaintiffs commenced a series of shareholder

27  derivative actions on behalf of Wells Fargo in San Francisco Superior Court, which were later

28  consolidated into the State CPI Action.  On May 16, 2018, Feuer commenced this federal

- 2 -

1   shareholder derivative action (the "Feuer CPI Action") alleging substantially similar claims

2   against current and former officers and directors of the Bank.  In both proceedings, defendants

3   sought dismissals for failure to satisfy the demand requirement.  In the State CPI Action, the court

4   granted demurrers twice on demand futility grounds, on May 8, 2018, and September 25, 2018,

5   respectively.[2]  In this action, the parties fully briefed defendants' motions to dismiss for failure to

6   plead wrongful demand refusal, by November 5, 2019.  *See* ECF Nos. 54-55, 61, 63-66.

7   **B.      Settlement of the State CPI Action and Feuer's Appeal**

8          On March 5, 2019, two days before a hearing on defendants' motions to dismiss in this

9   action, Wells Fargo notified the Court that the parties to the State CPI Action reached a settlement

10  and that it "expect[ed] to seek dismissal of this action on *res judicata* grounds upon final approval

11  of the settlement by the San Francisco Superior Court."  ECF No. 86.[3]  Recognizing the threat

12  posed to the continued viability of this action, on May 1, 2019, Feuer moved to intervene in the

13  State CPI Action for the purpose of objecting to settlement approval.[4]  In his motion to intervene,

14  Feuer expressed the same expectation that Wells Fargo would seek dismissal of this action upon

15  approval of the state settlement:

16              Feuer's counsel was advised that, if Feuer did not join in the [State
               CPI Action] "settlement," the settling parties [including Wells
17              Fargo] would, if their proposed settlement is approved, take the
               position that [Feuer's] claims in the Federal CPI Action would be
18              extinguished under principles of *res judicata* (a position that Feuer
               and his counsel vigorously dispute and will oppose).[5]
19

20  The state court subsequently denied preliminary approval on unrelated grounds, as well as

21  Feuer's motion for intervention, without prejudice to renewed requests.[6]

22

23  [2] Order Sustaining in Part with Leave & in Part without Leave Demurrers to Consol. Compl.,
    State CPI Action (May 8, 2018); Order Sustaining with Leave to Amend Demurrers, State CPI
24  Action (Sept. 25, 2018).
    [3] *See also* Notice of Conditional Settlement, State CPI Action (Mar. 1, 2019).  The Court
25  subsequently held a motion hearing on March 7, 2019, but thereafter administratively terminated
    the motions pending proceedings in the State CPI Action.  *See* ECF Nos. 101, 119.
26  [4] Mot. to Intervene, State CPI Action (May 1, 2019).
    [5] *Id.*, Ex. A ¶ 16.
27  [6] Order re Pls.' Mot. for Preliminary Approval of Proposed Derivative Settlement, State CPI
    Action (May 23, 2019); Order Denying without Prejudice Prospective Intervenor's Mot. to
28  Intervene (June 10, 2019).

- 3 -

1         Plaintiffs in the State CPI Action sought preliminary approval of a revised settlement on

2   June 21, 2019,[7] which the superior court granted over Feuer's opposition.[8]  On September 17,

3   2019, Feuer objected to the proposed settlement and request for attorney's fees, arguing, among

4   other things: (i) the settlement was reached in bad faith; (ii) the settling plaintiffs lacked standing

5   to settle or release claims on behalf of Wells Fargo; (iii) the settlement was inadequate for lack of

6   monetary compensation; (iv) the proposed corporate governance reforms were not meaningful;

7   and (v) attorney's fees were unwarranted in light of the settlement value.[9]  Overruling Feuer's

8   objections, the superior court granted final approval of the settlement and fee request, and entered

9   judgment in the State CPI Action, on January 15, 2020.  *See* ECF No. 137-1, Ex. B (Order

10  Granting Final Approval of Settlement).[10]  Specifically, the court reasoned the state settlement

11  was reasonable, viewed individually or as part of a global resolution of related actions (including

12  the Sales Practices Action), and that Feuer failed to make any showing he "could have secured a

13  better settlement than" the state plaintiffs.[11]  Having been permitted to intervene,[12] Feuer appealed

14  the court's final approval and fee orders on March 11, 2020.[13]  *See Feuer v. Maxwell*, No.

15  A160439 (Cal. Ct. App.) (the "State CPI Appeal").

16  **C.**    **Feuer's Agreement with the Bank to Resolve His Appeal in Exchange for a Personal Payoff**

17

18        On June 24, 2020, Feuer and the defendants to the State CPI Action executed a

19  "settlement" agreement whereby Feuer agreed to withdraw his objection to the settlement of the

20  State CPI Action and dismissal of the Feuer CPI Action, in exchange for a payment of $1.5

21  million from Wells Fargo.  ECF No. 137-3, Ex. F ("Feuer Settlement").  To effectuate the

---

[7] Renewed Mot. for Preliminary Approval of Settlement, State CPI Action (June 21, 2019).
[8] Order Preliminarily Approving Derivative Settlement & Providing for Notice, State CPI Action (July 12, 2019); *see also* Amicus Curiae Brief of R.A. Feuer in Further Opposition to Pls.' Renewed Motion for Preliminary Approval of Proposed Settlement, State CPI Action (June 27, 2019).
[9] Objection of R.A. Feuer to Proposed Settlement & to the Settling Pls.' Counsel's Appls. for Attorneys' Fees & Expenses, State CPI Action (Sept. 17, 2019).
[10] *See also* Order re Pls.' Appl. for Award of Attorneys' Fees & Expenses & Incentive Awards, State CPI Action (Jan. 15, 2020); Tentative Ruling re Final Approval & Related Mots., State CPI Action (Nov. 8, 2019).
[11] Tentative Ruling re Final Approval & Related Mots. at 2-3, State CPI Action (Nov. 8, 2019).
[12] Stipulation & Order re Renewed Mot. to Intervene, State CPI Action (Oct. 7, 2019).
[13] Notice of Appeal, State CPI Action (Mar. 11, 2020).

1  agreement, Feuer would also move to stay and remand his pending State CPI Appeal for

2  consideration of the Feuer Settlement by the trial court.  *Id.* ¶ 1.  Further, upon trial court approval

3  of the Feuer Settlement, Wells Fargo would then move this Court for (and Feuer would not

4  oppose) dismissal of the Feuer CPI Action on *res judicata* grounds.  *Id.* ¶ 9.  In accordance with

5  their agreement, Feuer secured a stay and remand of his State CPI Appeal, and on September 10,

6  2020, Feuer moved for preliminary approval of his settlement with the Bank.[14]

7        On October 5, 2020, Judge Andrew Y.S. Cheng of the superior court concluded in a

8  tentative ruling that he would deny preliminary approval of the Feuer Settlement "on the present

9  record" and ordered supplemental submissions regarding Feuer's request.  ECF No. 137-4, Ex. G

10  (Tentative Ruling).  Specifically, Judge Cheng called into question whether the state court was

11  the appropriate forum for evaluating the fairness of the Feuer Settlement, and further noted that

12  the court lacked adequate record evidence before it to make such an evaluation in any event.  *Id.*

13  On November 11, 2020, Feuer submitted a letter to the court, withdrawing his preliminary

14  approval motion.  The letter notified Judge Cheng that Feuer and Wells Fargo "inten[d] to modify

15  the settlement agreement appropriately to no longer require the [superior court's] approval for the

16  settlement to become effective, and for Mr. Feuer to withdraw [the State CPI Appeal]."  ECF No.

17  137-4, Ex. H.

18        On December 15, 2020, the same parties to the Feuer Settlement executed a revised

19  version agreement.  ECF No. 137-4, Ex. I ("Amended Feuer Settlement").  The Amended Feuer

20  Settlement contained the same material terms as those in the original Feuer Settlement—i.e.,

21  withdrawal of objections and dismissal of the State CPI Appeal, a motion to dismiss the Feuer

22  CPI Action, and payment of $1.5 million to Feuer and his counsel—except it no longer required

23  court approval.  Am. Feuer Settlement ¶¶ 2-4.

24        On February 22, 2021, pursuant to the terms of their agreement, Wells Fargo and Feuer

25  jointly moved to dismiss this action.

26

27  _____

28  [14] R.A. Feuer's Mot. for Order Preliminarily Approving Settlement for Withdrawal of Objections & Appeal, State CPI Action (Sept. 10, 2020).

1

**ARGUMENT**

2

**I.     Feuer and Wells Fargo's Joint Motion to Dismiss Constitutes a "Settlement,"**

3

**"Voluntary Dismissal," or "Compromise" Requiring Notice to Shareholders Under Rule 23.1.**

4

Rule 23.1(c) mandates notice to shareholders and judicial review where a derivative action

5

is "settled, voluntarily dismissed, or compromised."  The parties have styled their agreement to

6

resolve this action as a "joint motion to dismiss" in an obvious attempt to circumvent Rule 23.1's

7

requirements.  *See* Mot. (ECF No. 137) at 11.  That formalistic maneuver is both improper and

8

evinces Feuer's desire to avoid shareholder and judicial scrutiny of the means by which they

9

achieved finality of the State CPI Action and thus gave rise to *res judicata* here: an extortionate

10

payoff by Wells Fargo to Feuer and his counsel.

11

The joint motion to dismiss is the result of Feuer and the Bank's settlement of Feuer's

12

appeal in the State CPI Action; indeed, it is an express condition of that settlement.  *See* Am.

13

Feuer Settlement ¶ 4 (providing for dismissal of this action following payment to Feuer and his

14

counsel).  Their agreement that the resolution of the CPI State Action would serve as *res judicata*

15

with respect to this case thus constitutes a "settlement" or "compromise" of the case, or is at least

16

tantamount to a "voluntary dismissal" of it.  *See also* Fed. R. Civ. P. 41(a)(2) ("[A]n action may

17

be dismissed at the plaintiff's request only by court order, on terms that the court considers

18

proper."); *Bourgeois v. Valero Energy Corp.*, 2016 WL 7036788, at *1 n.1 (W.D. La. Nov. 7,

19

2016) (holding plaintiff's "Rule 12(b) motion filed in response to Plaintiff's own claims is

20

procedurally improper"), *report and recommendation adopted*, 2016 WL 7041636 (W.D. La.

21

Dec. 1, 2016).  Notice to shareholders is accordingly required under Rule 23.1.

22

Indeed, in tentatively denying preliminary approval of the Feuer Settlement, Judge Cheng

23

concluded the agreement between Feuer and the Bank amounted to a settlement of *this action* and

24

required approval by *this Court*:

25

> The parties argue that the benefit here to Wells Fargo is to
> "promptly resolve any appeal by [Feuer] because dismissal of

26

> [Feuer's] appeal will allow *res judicata* effect to be accorded to the
> Final Judgment in this Action, including with respect to the claims

27

> asserted in [the Feuer CPI Action].  However, this raises concerns
> as to whether this is a shareholder derivative settlement that falls

28

- 6 -

within the purview of this Court, *and whether this settlement should be filed in the [Feuer CPI Action].*

ECF No. 137-4, Ex. G (Tentative Ruling) at 3 (emphasis added) (citations omitted); *see also id.* ("[T]hough the [Feuer CPI Action] is not expressly included in the Released Claims, it seems the parties seek court approval here, in part, because it will in effect result in approval of a settlement in [the Feuer CPI Action].").

Because Feuer and his counsel have been paid $1.5 million for dismissal of his derivative claims, this Court must evaluate the fairness of the Amended Feuer Settlement after ordering notice to Wells Fargo's shareholders. As demonstrated below, there is nothing fair or equitable about the objector blackmail that led to the proposed resolution of this case.

## II.   The Feuer Settlement Was Structured to Avoid This Court's Scrutiny.

Despite their stated goal "to make the settlement public to avoid any questions about transparency," Mot. (ECF No. 137) at 11, Feuer and Wells Fargo structured the terms of their agreement to avoid judicial scrutiny by the superior court or this Court. Following settlement of the State CPI Action, Feuer deliberately cast his agreement with the Bank as a settlement of his objections to (and appeal of) the settlement of the State CPI Action.[15] However, as Judge Cheng observed, Feuer's characterization was belied by the fact that Feuer's intervention in the State CPI Action was premised on "the benefit Feuer seeks on behalf of nominal defendant, Wells Fargo, in [the Feuer CPI Action]." ECF No. 137-4, Ex. G (Tentative Ruling) at 3. Accordingly, Feuer was "effectively settling his two different complaints" (i.e., his complaint in intervention in the State CPI Action, and his claims in this case), and Judge Cheng questioned why such a settlement would not require approval by both courts. *Id.* at 6.

Rather than address the superior court's concerns, Feuer promptly withdrew his request for judicial approval of the Feuer Settlement "to modify the settlement agreement appropriately to no longer require the [superior court's] approval for the settlement to become effective." ECF No. 137-4, Ex. H. Particularly in view of Judge Cheng's suggestion that Feuer and Wells Fargo

---

[15] R.A. Feuer's Mot. for Order Preliminarily Approving Settlement for Withdrawal of Objections & Appeal, State CPI Action (Sept. 10, 2020).

1    intended to settle his claims in *this case*, the parties could have structured their settlement to

2    require approval by *this Court*—but again, they did not.  The Amended Feuer Settlement

3    maintains the same core terms as before, but rather than requiring judicial approval by the state

4    court, it now contemplates *no judicial scrutiny whatsoever*.

5         To be clear, nothing prevents Feuer and Wells Fargo from explicitly agreeing to settle

6    Feuer's derivative claims in this action.  Indeed, Feuer admits that prior to intervening in and

7    objecting to the settlement of the State CPI Action, he was invited to release his claims by

8    participating in a global settlement, but he declined to do so.[16]  Following settlement approval in

9    the State CPI Action, Feuer now "agrees and acknowledges" final judgment in that case

10   constitutes "res judicata as to all of [his] derivative claims" in this case.  Am. Feuer Settlement at

11   5.  Thus, as Judge Cheng recognized, the pendency of Feuer's continued appeal operated to

12   deprive Wells Fargo of the resolution necessary "to avoid interfering" with the settlement of the

13   Sales Practices Action, and its ability to collect the $240 million payment due that settlement.[17]

14   The Bank's decision to pay Feuer and his counsel to secure settlement proceeds from the Sales

15   Practices Action is rational.  But viewed in the context of Feuer's derivative claims in this case,

16   the $1.5 million payment afforded neither the Bank nor its shareholders any substantive benefit.

17        Accordingly, the assertion that Feuer's agreement with the Bank is not a settlement of this

18   action poses a distinction without a difference.  This Court should not countenance such a clear

19   attempt to evade judicial scrutiny.

20   **III.    The Court Should Disgorge from Feuer and His Counsel the $1.5 Million They**
         **Extorted from Wells Fargo.**

21

22        Sales Practices Plaintiffs further request that the Court order Feuer and his counsel to

23   disgorge the $1.5 million payment they extracted from the Bank.  This Court is the proper forum

24   to address, and has the equitable power to remedy, Feuer's and his counsel's misconduct.  *See*

25   _____

     [16] Mot. to Intervene, State CPI Action (May 1, 2019), Ex. A ¶ 16.
26   [17] Tentative Ruling re Final Approval & Related Mot., State CPI Action (Nov. 8, 2019) (viewing
     viewed settlement of the State CPI Action as a "component[] of a global settlement" involving the
27   Sales Practices Action); *see also* Sales Practices Action, ECF No. 270-1 ¶ 41(c) (conditioning
     settlement on "[t]he contemporaneous (but unconnected) resolution of" the State CPI Action and
28   the Feuer CPI Action)..

1    *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (holding federal courts possess "the ability

2    to fashion an appropriate sanction for conduct which abuses the judicial process").

3            Disgorgement is an appropriate equitable remedy where, as here, a litigant and counsel

4    have obtained ill-gotten gains. *See Porter v. Warner Holding Co.*, 328 U.S. 395, 398-99 (1946)

5    (holding that unless otherwise provided by statute, district courts may exercise "all the inherent

6    equitable powers" to fashion equitable relief, including disgorgement); *Pearson v. Target Corp.*,

7    968 F.3d 827, 829 (7th Cir. 2020) (holding district court had equitable power to order objectors

8    disgorge proceeds of private settlements). In the guise of pursuing additional benefit for Wells

9    Fargo and its shareholders by challenging the superior court's approval of the settlement in the

10   State CPI Action, Feuer filed an appeal and then proceeded to forgo the interests of other

11   shareholders by securing a payment for himself and his counsel. To that end, Feuer leveraged his

12   appeal—the pendency of which prevented the finality of the $240 million settlement in the Sales

13   Practices Action—to pressure the Bank to pay him off. The Court should preclude Feuer and his

14   counsel from profiting from their extortion.

15           **A.      Feuer and His Counsel Acted in Bad Faith by Violating Their Duty to Serve
                        the Bank's (and Its Shareholders') Interests.**

16

17           The dispositive question in determining whether to assess sanctions under the Court's

18   inherent authority is whether Feuer and his counsel have acted "in bad faith," which "includes a

19   broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

20   Sanctions are justified where, for example, a party "acts *for an improper purpose*—even if the act

21   consists of making a truthful statement or a non-frivolous argument or objection." *Id.* (emphasis

22   in original). Such an improper purpose can include "an attempt to influence or manipulate

23   proceedings in one case in order to gain tactical advantage in another case." *Id.* at 994; *see also*

24   *Pearson*, 968 F.3d at 833 (class objectors have "a duty to object only in 'good faith' . . . that is,

25   not for an improper purpose"). Feuer and his counsel have done precisely that: abusing the terms

26   of the settlements of the Sales Practices Action and the State CPI Action to extract a payoff from

27   Wells Fargo.

28

1    As explained above, once the superior court entered final judgment in the State CPI

2    Action, Feuer's derivative claims had no value unless he could overturn the state settlement on

3    appeal.  But instead of pursuing his appeal on behalf of the Bank and its shareholders, Feuer and

4    his counsel agreed to a settlement that secured benefits only for themselves.  This is precisely the

5    kind of "objector blackmail" courts and commentators have deemed "a serious problem."  Brian

6    T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623, 1625 (2009); *see also*

7    Fed. R. Civ. P. 23(e)(5); Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes (highlighting

8    problem of objectors who "may be . . . using objections to obtain benefits for themselves rather

9    than assisting in the settlement-review process," which led to 2018 amendment of Rule 23(e) to

10   require court approval of payment for forgoing, dismissing, or abandoning objector appeal).[18]

11   Appreciating the implications of delaying resolution of both the State CPI Action and the

12   Feuer CPI Action to Wells Fargo's ability to collect its $240 million from the settlement of the

13   Sales Practices Action, Feuer and his counsel leveraged his appeal, which he purportedly brought

14   on behalf of the Bank, to extract a $1.5 million payment in exchange for voluntary dismissal of

15   his appeal and this action.

16   The U.S. Supreme Court has instructed that where, as here, a litigant "appeal[s] from a

17   judgment which affected a whole class of stockholders," his rights are "inseparable" from those

18   of his fellow shareholders, and thus "owe[s] an obligation to them."  *Young v. Higbee Co.*, 324

19   U.S. 204, 209-10 (1945).  Further, "class" as used in this context is not limited to formal class

20   proceedings; rather, "[t]he liability of one who assumes a determining position over the rights of

21   others must turn on something more substantial than mere formal allegations in a complaint," as

22   "[e]quity looks to the substance and not merely to the form."  *Id.* at 209.  This duty is essentially

23   fiduciary in nature, but "at the very least" requires the objector "to act in good faith."  *Id.* at 210.

24   Accordingly, in challenging the state court settlement, Feuer and his counsel could not simply

25   "shake off their self-assumed responsibilities to others by a simple announcement that henceforth

---

[18] *See also Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834, at *1 (D. Mass. Aug. 22, 2006) (observing in large settlements, "objectors can levy what is effectively a tax . . . that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.").

- 10 -

they w[ould] trade in the rights of others for their own aggrandizement." *Id.* at 213.  But they did

exactly that.

Applying the principles articulated in *Young*, the Seventh Circuit recently held "that

settling an objection that asserts the class's rights in return for a private payment to the objector is

inequitable and that disgorgement is the most appropriate remedy." *Pearson*, 968 F.3d at 829.

Specifically, the court of appeals determined that class-based objectors assume "a limited

representative or fiduciary duty" to represent the "common rights of all" class members and to

object in good faith. *Id.* at 834.  As the court explained:

> This case turns on a simple either/or proposition whose logic flows
> directly from *Young*.  These objectors made sweeping claims of
> general defects in the *Pearson II* settlement.  Either those objections
> had enough merit to stand a genuine chance of improving the entire
> class's recovery, or they did not.  If they did, the objectors sold off
> that genuine chance, which was the property of the entire class, for
> their own, strictly private, advantage.  If they did not, the objectors'
> settlements of meritless claims traded only on the strength of the
> underlying litigation, also the property of the entire class, to
> leverage defendants' and class counsel's desire to bring it to a close.
> Either way, the money the objectors received in excess of their
> interests as class members was not paid for anything they owned,
> and thus belongs in equity to the class.

*Id.*  (citations and internal quotation marks omitted).

Moreover, like Feuer, one objector there, Nunez, sought to avoid disgorgement by arguing

he was settling both his objection to the so-called "*Pearson II* settlement" and his own class

action alleging substantially similar claims.  Recognizing "the value of the *Nunez* action at the

time it was settled was zero," the Seventh Circuit concluded that by settling his objections,

"Nunez ensured the *Pearson II* settlement would finally bind him just as it bound every other

class member.  Maintaining *Nunez* thereafter would have been sanctionably frivolous." *Id.* at 835.

As in *Pearson*, Feuer objected to and later appealed the settlement of the State CPI Action,

asserting the state settlement was unfair, unreasonable, and inadequate for the Bank and its

shareholders.  But Feuer then jettisoned the interests of other shareholders by extracting a

personal payoff from Wells Fargo.  In doing so, Feuer and his counsel violated their "limited

1   representative or fiduciary duty" and acted for an improper purpose. *Id.* at 833-34.

2   Disgorgement is therefore warranted.

3        In the Sales Practices Action, this Court recently denied a motion for sanctions against an

4   objector who similarly obtained $1.75 million from the Bank in exchange for dismissal of a state

5   court appeal that impeded Wells Fargo's ability to recover its $240 million.  Despite finding the

6   side payment likely "amount[ed] to constructive fraud" and deeming the objector's explanations

7   "unsatisfying," this Court concluded it lacked the authority to order disgorgement under the

8   reasoning in *Pearson* because the payment "was made for the withdrawal of an objection in the

9   state case—a case that is pending before another court."  Sales Practices Action, ECF No. 355 at

10  8-12.  Disgorgement is appropriate here, however, because unlike in the Sales Practices Action,

11  Feuer's agreement with the Bank necessarily entails settlement or voluntary dismissal of his

12  claims in *this action*, before *this Court*—a conclusion Judge Cheng came to in tentatively denying

13  approval of the agreement then before him.[19]

14        **B.    The $1.5 Million Payment to Feuer and His Counsel Was Not Compensation
               for Causing a Reduction in the Fee Award or Proposing Revisions to the
15             Notice in the State CPI Action.**

16        Feuer and the Bank contend the $1.5 million payment under the Amended Feuer

17  Settlement "reflected a portion of the savings to Wells Fargo from the reduction in fees awarded

18  to the State Court Plaintiffs' counsel after Feuer filed his objections to the State Court Settlement,"

19  as well as "Feuer's counsel's role in reviewing and proposing revisions to the notice to

20  shareholders . . . to clarify the terms of the settlement, the claims and parties to be released, and

21  the related cases that would be affected by it."  Mot. (ECF No. 137) 4-5.  If that were the actual

22  basis for getting paid by Wells Fargo, however, Feuer was required to move the trial court for

23  attorneys' fees and an incentive award.  *See Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794,

24  1808 (1996) ("[T]horough judicial review of fee applications is required in all class action

25  settlements[.]").  But Feuer and his counsel knew the state court would not award them anywhere

26  near the outsize payment they secured by leveraging his appeal to extort Wells Fargo.

[19] To the extent this Court determines the Amended Feuer Settlement, like the objector settlement in the Sales Practices Action, deprives this Court of the authority to impose sanctions, Sales Practices Plaintiffs intend to seek the same relief from the superior court.

Fees to objectors' counsel, like fees to plaintiffs' counsel, must be proportionate to the benefit objectors afforded to the corporation. *See Woodland Hills Residents Ass'n, Inc. v. City Council of L.A.*, 23 Cal. 3d 917, 945 (1979) (fee award must "bear a reasonable relation to the benefits" conferred); *Mark v. Spencer*, 166 Cal. App. 4th 219, 229 (2008) ("an award of attorney fees in class action litigation must be tied to counsel's actual efforts to benefit the class"). Even assuming Feuer's arguments caused the state court to reduce the fee award to plaintiffs' counsel by approximately $2.7 million (ECF No. 137-4, Ex. I at 3), any award by the state court would have paled in comparison to the $1.5 million Feuer and his counsel extracted from Wells Fargo, particularly given the minimal amount of time they devoted to the case. *See, e.g.*, ECF No. 137-4, Ex. G (Tentative Ruling) at 4-5 ("Feuer must provide evidence that attributes this $2.7 million reduction in fees awarded to Plaintiffs' Counsel to Feuer's objections specifically. The Court is presently unconvinced that the entirety of the reduction should be redirected to Feuer and his counsel."); Tentative Ruling re Final Approval & Related Motion, State CPI Action (Nov. 8, 2019) at 10 ("[G]iven the number of plaintiffs and *the limited time commitment that was apparently involved*—for example, there do not appear to have been depositions or formal discovery—an award of *$2,000* per person appears reasonable." (emphasis added)).

In fact, the only "benefit" Feuer provided to Wells Fargo was the dismissal of his appeal, an impediment *Feuer himself* imposed on the Bank. That would not constitute a compensable benefit under governing fee jurisprudence. Feuer and his counsel thus could only obtain such compensation through extra-judicial means.

## CONCLUSION

Feuer and his counsel have improperly leveraged Feuer's claims in this action, as well as his objections to and appeal of the settlement of the State CPI Action, to extract a $1.5 million personal payoff from Wells Fargo. Further, they now seek this Court's approval of the arrangement as a matter of course, without asking for evaluation of the substance of that agreement or affording shareholders an opportunity to weigh in. Their conduct represents an abuse of the judicial process and warrants the return of their ill-gotten gains to the Bank and its shareholders. Accordingly, for the reasons set forth above, Sales Practices Plaintiffs respectfully

1   request that the Court order notice to shareholders of the Amended Feuer Settlement under Rule

2   23.1(c), and further order disgorgement of the $1.5 million payment Feuer and his counsel

3   improperly received in exchange for dismissal of this action.

4   Dated: March 8, 2021                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

5

6                                          By: */s/ Richard M. Heimann*
                                           Richard M. Heimann (063607)
                                           *rheimann@lchb.com*
7                                          Katherine C. Lubin (259826)
                                           *kbenson@lchb.com*
8                                          Michael K. Sheen (288284)
                                           *msheen@lchb.com*
9                                          275 Battery Street, 29th Floor
                                           San Francisco, CA 94111-3339
10                                         Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008
11
                                           Steven E. Fineman (140335)
12                                         *sfineman@lchb.com*
                                           Daniel P. Chiplock (*Pro hac vice*)
13                                         *dchiplock@lchb.com*
                                           Nicholas Diamand (*Pro hac vice*)
14                                         *ndiamand@lchb.com*
                                           Michael J. Miarmi (*Pro hac vice*)
15                                         *mmiarmi@lchb.com*
                                           Sean A. Petterson (*Pro hac vice*)
16                                         *spetterson@lchb.com*
                                           250 Hudson Street, 8th Floor
17                                         New York, NY 10013-1413
                                           Telephone: (212) 355-9500
18                                         Facsimile: (212) 355-9592

19                                         *Attorneys for Co-Lead Plaintiff Fire & Police Pension*
                                           *Association of Colorado in In re Wells Fargo & Co.*
20                                         *S'holder Derivative Litig., No. 3:16-cv-05541-JST*

21

22

23

24

25

26

27

28

1

2
                              SAXENA WHITE P.A.

Maya Saxena (*Pro hac vice*)
*msaxena@saxenawhite.com*

3
Joseph E. White, III (*Pro hac vice*)
*jwhite@saxenawhite.com*

4
Lester R. Hooker (241590)
*lhooker@saxenawhite.com*

5
Adam D. Warden (*Pro hac vice*)
*awarden@saxenawhite.com*

6
Dianne M. Pitre (286199)
*dpitre@saxenawhite.com*

7
7777 Glades Road, Suite 300
Boca Raton, FL 33434

8
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

9

10
Steven B. Singer (*Pro hac vice*)
*ssinger@saxenawhite.com*

11
Kyla Grant (*Pro hac vice*)
*kgrant@saxenawhite.com*

12
Sara DiLeo (*Pro hac vice*)
*sdileo@saxenawhite.com*

13
10 Bank Street, 8th Floor
White Plains, NY 10606

14
Telephone: (914) 437-8551
Facsimile: (888) 631-3611

15
*Attorneys for Co-Lead Plaintiff The City of Birmingham in*

16
*In re Wells Fargo & Co. S'holder Derivative Litig., No.
3:16-cv-05541-JST*

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -