1  CIARDI CIARDI & ASTIN
   Gary B. Elmer, Esq. (SBN 137885)
2  Walter W. Gouldsbury III, Esq. (SBN 240230)
   600 B Street, Suite 300
3  San Diego, California 92101
   Tel: (619) 270-8811
4  Fax: (619) 923-2125
   E-mail: gelmer@ciardilaw.com
5          wgouldsbury@ciardilaw.com

6  GREENFIELD & GOODMAN LLC

7  Richard D. Greenfield, Esq.
   (Admitted *pro hac vice*)
8  1905 Spruce Street
   Philadelphia, PA 19103
9  Telephone: (917) 495-4446
   E-mail: rule23gg@gmail.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R. A. FEUER, derivatively on behalf of WELLS FARGO & COMPANY,<br><br>                              Plaintiff,<br><br>    v.<br><br>JOHN D. BAKER, II, et al.<br>                              Defendants,<br><br>          - and -<br><br>WELLS FARGO & COMPANY,<br><br>                     Nominal Defendant. | Case No. 4:18-cv-02866-JST<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF JOINT MOTION TO DISMISS THE AMENDED COMPLAINT ON THE GROUNDS OF *RES JUDICATA* AND OPPOSITION TO MOTION FOR DISGORGEMENT**<br><br>Judge: Hon. Jon S. Tigar<br>Hearing Date: April 1, 2021<br>Hearing Time: 2:00 p.m. |

1

**TABLE OF CONTENTS**                                                                 Page

INTRODUCTION…………………………………………………………………………………….2

PERTINENT PROCEDURAL HISTORY…………………………………………………………….3

ARGUMENT…………………………………………………………………………………………..5

       I.     The Sales Practices Plaintiffs Lack Standing To "Respond" to the Parties' Joint Motion to Dismiss or Seek Disgorgement…………………………………………..6

      II.    Rule 23.1 Is Not Implicated by the Parties' Joint Motion to Dismiss…………… 9

      III.   Plaintiff Has Sought, Not Avoided, Judicial Scrutiny ……………………….... 9

      IV.   There Is No Factual or Legal Basis for this Court to Order Sanctions Or Disgorgement………………………………………………………………… 11

CONCLUSION……………………………………………………………………………………….15

# TABLE OF AUTHORITIES

**Case**                                                                                                   **Page**

*Citibank Int'l v. Collier-Traino, Inc.*,
    809 F. 2d 1438 (9th Cir. 1987)……………………………………………………………….   5

*Fink v. Gomez*,
    239 F. 3d 989 (9th Cir. 2001)……………………………………………………………   2

*Greenbaum v. Islamic Republic of Iran*,
    782 F. Supp. 2d 893 (C.D. Cal. 2008)……………………………………………………   5

*Pearson v. Target Corp.*,
    968 F. 3d 827, 838 (7th Cir. 2020)…………………………………………………………   11

*Primus Auto Fin. Servs., Inc. v. Batarse*,
    115 F. 3d 644 (9th Cir. 1997) ……………….......................................................   2

*United States EEOC v. JCFB, Inc.*,
    2019 U.S. Dist. LEXIS 137628 …………………………………………………………..   5

Plaintiff R.A. Feuer ("Plaintiff" or "Mr. Feuer") respectfully submits this Reply in further support of the Joint Motion of Plaintiff and Nominal defendant Wells Fargo & Co. ("Wells Fargo" or "the Company") to Dismiss the Amended Complaint on the Grounds of *Res Judicata* (ECF No. 137) and in opposition to the Response and Motion for Disgorgement lodged by non-party The Fire & Police Pension Association of Colorado and The City of Birmingham Retirement and Relief System (the "Sales Practices Plaintiffs"). (ECF No. 140).

## INTRODUCTION

Without standing to do so, the Sales Practices Plaintiffs have launched a spurious*, ad hominem*, attack on the integrity and motives of Plaintiff and his counsel, as well as Wells Fargo, in agreeing to resolve, *inter alia*, Plaintiff's appeal and objections (which he aggressively litigated for over a year) in *In re Wells Fargo & Co. Auto Insurance Derivative Litig.*, No. CGC17-561118 (S.F. Super) (the "State CPI Action") and thereafter seek dismissal of this action on *res judicata* grounds. The Sales Practices Plaintiffs' response is procedurally improper, factually inaccurate, legally baseless, and itself constitutes potentially sanctionable conduct.[1] Because the response is procedurally improper the Court

---

[1] Sales Practices Plaintiffs' motion is peppered with *ad hominem* attacks on Plaintiff and his counsel that lack evidentiary support and are wholly without merit. (ECF No. 140 at: 4 ("extortionate 'settlement'"); at 5 ("objector backmail"; "game the system"; "sham settlement"); at 9 ("extortionate payoff"); at 11 ("clear attempt to evade judicial scrutiny; "misconduct"); at 12 ("ill-gotten gains"; "extortion"; "abusing the terms of the settlement); at 14-15 ("violated their … fiduciary duty and acted for an improper purpose"); at 16 ("abuse of judicial process"). When, as here, allegations are based on nothing but speculation and conjecture, Fed.R.Civ.P 11 is implicated. Rule 11 provides that [by] presenting to the court a pleading, written motion or other paper, an attorney certifies that "to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances"* … (3) *the factual contentions have evidentiary support."* (emphasis added). 28 U.S.C. §1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." Finally, under its inherent powers, a court may impose sanctions in the form of attorneys' fees when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F. 3d 644, 648 (9th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-59 (1975)). *See also Fink v. Gomez*, 239 F. 3d 989, 994 (9th Cir. 2001) ("[A]n attorney's reckless misstatements of law and fact, when coupled with an improper purpose, … are sanctionable under a court's inherent power."). Plaintiff reserves all rights to seek sanctions against the Sales Practices Plaintiffs and their counsel related to their baseless motion.

should decline to consider it. If the Court decides to entertain it on the merits, the requested relief should be denied.

**PERTINENT PROCEDURAL HISTORY**

**Plaintiff's Pursuit of CPI-related Claims in this Action**

As set forth in detail in the Joint Motion to Dismiss (ECF No. 137 at 9-13), Plaintiff has been involved in pursuing claims derivatively on behalf of nominal Defendant Wells Fargo since prior to December 12, 2016, when he made his initial demand on the Company's Board of Directors. *See* Exhibit A to Declaration of Richard D. Greenfield ("Greenfield Decl.") filed concurrently herewith. This initial demand was followed by ongoing written and oral communications with counsel for members of Wells Fargo's Board of Directors with respect to the substance of the demands, the manner in which they were addressed and otherwise. Thereafter, Plaintiff's counsel transmitted additional demands to the Board on October 30, 2017 (Greenfield Decl., Exh. B), leading to the filing of his initial complaint on May 16, 2018. (ECF No. 1) after his pre-suit demands were rejected. An operative amended complaint was filed on June 20, 2018 (ECF No. 19).

On September 7, 2018, Wells Fargo moved the dismiss the amended complaint for failure to adequately plead wrongful demand refusal (ECF No. 54), and Plaintiff filed an extensive opposition to the motion to dismiss on October 8, 2018. (ECF No. 61). Oral argument was heard on March 7, 2019, and a decision remained pending when the Court administratively terminated the motion pending a ruling by the California Superior Court on the State CPI Action settlement. (ECF No. 119).

**Plaintiff's Intervention and Objections in the State CPI Action**

In early 2019, the parties in the State CPI Action reached a settlement agreement, and, on March 5, 2019, two days before the hearing on defendants' motion to dismiss was argued in this Action, Wells Fargo notified this Court of the State CPI Action settlement and indicated it would seek dismissal of this Action on *res judicata* grounds upon final approval of the State CPI Action settlement. (ECF No. 86). On May 1, 2019, Feuer moved to intervene in the State CPI Action for the purpose of objecting to

settlement approval. *See* Greenfield Decl., Exhibit C.  The state court subsequently denied preliminary approval and Plaintiff's motion to intervene without prejudice to a renewed request.[2] On June 21, 2019, the State CPI plaintiffs sought preliminary approval of a revised settlement. On June 27, 2019, Mr. Feuer filed an *Amicus Curiae* brief in opposition to the renewed motion for preliminary approval of the revised State Action CPI settlement.  *See* Greenfield Decl., Exh. D.

On July 12, 2019, the Superior Court granted preliminary approval over Mr. Feuer's objections.  Order Preliminarily Approving Derivative Settlement, State CPI Action (July 12, 2019). Mr. Feuer then filed a renewed motion to intervene for purposes of objecting to the proposed settlement, which was granted. Order Re: Prospective Intervenor's Renewed Motion to Intervene, State CPI Action (September 16, 2019).  On September 17, 2019, Mr. Feuer filed extensive objections to the request for final approval of the proposed settlement, as well as the request for attorneys' fees submitted by Plaintiffs' counsel.  *See* Greenfield Decl., Exh. E.  On October 4, 2019, Mr. Feuer filed a Sur-Reply Memorandum of Points and Authorities in further support of his objections to the proposed settlement. *See* Greenfield Decl., Exh. F. The California Superior Court finally approved the State CPI Action settlement on January 15, 2020, over Mr. Feuer's objections, and, after giving due consideration to his objections, reduced the attorneys' fees sought by plaintiffs' counsel from $5 million to $2,298,077.25, a reduction of more than $2.7 million.  *See* ECF No. 137-1, Ex. B).  On March 11, 2020, Mr. Feuer noticed his appeal.

Thus, Mr. Feuer and his counsel invested substantial time and effort in opposing both preliminary and final approval of the State CPI Action settlement, appearing multiple times throughout this period in the State CPI Action, both orally and in extensive written submissions, with the objective of either preventing the State Action CPI settlement from becoming final or, at a minimum, seeking changes to it.

---

[2] Order re: Pls.' Mot. for Preliminary Approval of Proposed Derivative Settlement, State CPI Action (May 23, 2019); Order Denying Without Prejudice Prospective Intervenor's Mot. to Intervene, State CPI Action (June 10, 2019).

-4-

# ARGUMENT

## I. The Sales Practices Plaintiffs Lack Standing To "Respond" to the Parties' Joint Motion to Dismiss or Seek Disgorgement

Without first seeking to intervene, non-party Sales Practices Plaintiffs filed a "response" to the joint motion to dismiss of Plaintiff and Wells Fargo. As part of their response, Sales Practices Plaintiffs ask this Court to impose sanctions on Plaintiff's counsel in the form of disgorgement of the $1.5 million paid by Wells Fargo to such counsel and their predecessors in connection with the settlement and resolution of Plaintiff's appeal and objections filed and litigated in the State CPI Action. (ECF No. 140). The Sales Practices Plaintiffs do not address the issue of their standing to make such a motion, stating only that their response is submitted "in their capacity as Wells Fargo shareholders and Court-appointed co-lead plaintiffs in the 'related' action, *In re Wells Fargo & Co. Shareholder Derivative Litigation*, No. 4:16-cv-05541-JST (N.D. Cal.) (the "Sales Practices Action")." (ECF No. 140 at 4).

The Sales Practices Plaintiffs are not parties in this action. It is well settled under Ninth Circuit law that District Courts "properly refuse[ ]" to consider any 'motion [that is] filed by a nonparty." *United States EEOC v. JCFB, Inc.,* 2019 U.S. Dist. LEXIS 137628, *1, quoting *Citibank Int'l v. Collier-Traino, Inc.*, 809 F. 2d 1438, 1440 (9th Cir. 1987). If a party has not moved to intervene, the court should not entertain its arguments. *Greenbaum v. Islamic Republic of Iran,* 782 F. Supp. 2d 893, 897, f.n.3 (C.D. Cal. 2008).

The Sales Practices Plaintiffs' allegation that this Action is "related" to the Sales Practices Action is misleading and, in any event, insufficient to confer standing. This Action and the Sales Practices Action were litigated separately and never consolidated. Indeed, although this Action alleges certain background information referencing the sales practices at issue in the Sales Practices Action and Plaintiff's pre-suit demands relating thereto, at the insistence of counsel for the Sales Practices Plaintiffs, a Stipulation and Order was entered in this Action on September 7, 2018, pursuant

to which it was agreed (and so Ordered by this Court), that Plaintiff would not seek or assert any claims for relief involving the unauthorized sales practices at issue in the Sales Practices Action in this Action. (ECF No. 52).

The fact that both actions involve categories of alleged wrongdoing by Wells Fargo (that Sales Practices Plaintiffs insisted be handled separately) and that the Sales Practices Plaintiffs were appointed as co-lead plaintiffs in the Sales Practices Action is patently insufficient to confer standing on them to participate *in this Action*. No procedure has been established by this Court for Wells Fargo shareholders to appear and be heard in this Court regarding a settlement that occurred between Plaintiff and Wells Fargo in the State CPI Action. The Sales Practices Plaintiffs have neither sought to intervene nor been granted leave to intervene and their response and motion are procedurally improper.

## II. Rule 23.1 Is Not Implicated by the Parties' Joint Motion to Dismiss

Wells Fargo and Plaintiff seek dismissal of this action based on the *res judicata* effect of a final judgment entered by the California Superior Court in the State CPI Action. This outcome has been anticipated since early 2019, when a settlement agreement was first reached in the State CPI Action. The fact that judgment in the State CPI Action became final following the settlement of Mr. Feuer's appeal of the Superior Court's final approval of the settlement (as opposed to becoming final absent his objections) does not magically transform the resolution of his appeal and objections there into a "settlement" of *this Action*. Despite the Sales Practices Plaintiffs' inflammatory and false rhetoric, *this* Action is not being "settled, voluntarily dismissed, or compromised." Rather, this Action has been rendered moot by principles of *res judicata,* a result that was contemplated and well known by all parties and communicated clearly to this Court *well before* Plaintiff objected to the settlement of the State CPI Action or filed an appeal. The factual record before this Court lays bare the baseless nature of the Sales Practices Plaintiffs' accusations of subterfuge and bad faith.

All elements necessary for this Action to be dismissed on *res judicata* grounds are

present. (ECF No. 137, pp. 13-18). The Sales Practices Plaintiffs expressly recognize this fact. (ECF No. 140, p. 4). Nevertheless, they allege that because the settlement agreement between Plaintiff and Wells Fargo provides for dismissal of this Action, *res judicata* arises not from well-established legal principles, but rather from the settlement agreement itself. (ECF No. 140, p. 9). The Sales Practices Plaintiffs assert, falsely, that the recognition of the *res judicata* effect of their settlement is part of a nefarious scheme to avoid judicial scrutiny. (ECF No. 140 at 10-11). The Sales Practices Plaintiffs' inflammatory allegations are patently false.

As early as January 27, 2019, shortly after an agreement in principle to settle the State CPI Action was first reached, Plaintiff's former principal counsel of record, Mr. Greenfield, wrote to this Court and advised it of the existence of the proposed settlement and his concerns related thereto, including concerns related to the potential usurpation of this Court's jurisdiction over the claims asserted in this case. (ECF No. 74). Mr. Greenfield actively sought this Court's involvement in any settlement of the CPI-related claims, stating "[t]his Court has jurisdiction over the parties and their counsel in this case and has the authority to obtain information regarding the proposed settlement promptly … In this way, Your Honor can evaluate the remedies potentially available to the Court to protect its jurisdiction and maintain the integrity of the proceedings before it." (ECF No. 74, pp. 2-3). Plaintiff's former counsel of record actively invited this Court to provide a "framework for addressing what may turn out to be multi-jurisdictional (*i.e.* in this Court and the state court) objection litigation." (*Id. at 3*).

In response, this Court noted that all parties recognized, even at this early date, that the settlement of the State CPI Action "will extinguish the claims of [Plaintiff] in this [case]." (ECF No. 76, p. 1).[3] In granting a continuance related to oral argument on Wells Fargo's then-pending motion to dismiss, this Court directed that any objection or proceedings related to the settlement of the State CPI

---

[3] Thereafter, on many occasions *before* the settlement related to Plaintiff's appeal was reached, the parties repeatedly advised this Court of the fact that *by its terms* (and *not* by any "agreement" between Plaintiff and Wells Fargo), the State CPI Action settlement would release all of the claims asserted by Plaintiff on behalf of Wells Fargo in this Action. *See, e.g.,* ECF No 86; ECF No. 96, p. 2.

| | |
|---|---|
| 1 | Action be dealt with there, *not in this Court*. (ECF No. 76, p. 2; "And more importantly, this Court is |
| 2 | not the appropriate place to express objections regarding a settlement pending elsewhere. The |
| 3 | appropriate place is the court where the settlement is pending."). Heeding this Court's directive, |
| 4 | Plaintiff filed and actively litigated extensive objections to the settlement of the CPI-related claims |
| 5 | asserted both in this Action and in the State CPI Action in the California Superior Court. *See, supra*, pp. |
| 6 | 3-4 and Greenfield Decl. Exhs. C-F. |
| 7 | |
| 8 | The settlement agreement acknowledges Plaintiff's counsel's role in reviewing and |
| 9 | proposing revisions to the notice to shareholders in the State CPI Action settlement, clarifying the terms |
| 10 | of the settlement, the claims and parties to be released and the related cases that would be affected by it, |
| 11 | as well as a $2.7 million reduction in attorneys' fees awarded to plaintiffs' counsel. (ECF No. 137 at |
| 12 | 11-12). Nevertheless, Plaintiff determined to appeal the final approval of the State CPI settlement, a |
| 13 | decision that was made well *before* any discussions with Wells Fargo relating to possible resolution of |
| 14 | that appeal. *See* Greenfield Decl. at ¶8. The factual record does not support the Sales Practices |
| 15 | Plaintiffs' allegations of alleged wrongdoing. |
| 16 | |
| 17 | In keeping with this Court's prior directive, and in recognition of principles and judicial |
| 18 | comity and efficiency, any purported concerns the Sales Practices Plaintiffs have about the settlement |
| 19 | between Plaintiff and Wells Fargo should have been addressed by the state court, not this Court. Indeed, |
| 20 | counsel for the Sales Practices Plaintiffs was present at several of the Superior Court hearings on the |
| 21 | proposed settlement. That Court is familiar with the facts and circumstances surrounding both the terms |
| 22 | of the CPI settlement, Plaintiff's objections thereto and participation therein, and the changes and |
| 23 | iterations to the settlement that occurred following Plaintiff's objections, made both orally at hearings |
| 24 | before the Court and in documents submitted to it. The Superior Court, not this Court, was best |
| 25 | positioned to respond to any allegations about the propriety of the settlement agreement between |
| 26 | Plaintiff and Wells Fargo. The Sales Practices Plaintiffs chose to remain silent and did not object to the |
| 27 | settlement between Mr. Feuer and Wells Fargo, including the payment to Plaintiff's counsel. This |
| 28 | |

-8-

Action should be dismissed based on *res judicata*, a legal result Wells Fargo made clear it would seek all along upon final judgment in the State CPI Action, regardless of, *not because of*, any agreement with Plaintiff to resolve his state court appeal. (ECF No. 137, p. 18). Plaintiff was not "paid $1.5 million for dismissal of his derivative claims" *in this Action*. (ECF 140, p. 10). He was paid $1.5 million for the resolution of his appeal relating to, *inter alia*, his objections asserted and litigated in the State CPI Action. The settlement agreement between Plaintiff and Wells Fargo is not a settlement, compromise or voluntary dismissal *of this Action*.[4]

### III. Plaintiff Has Sought, Not Avoided, Judicial Scrutiny

Sales Practices Plaintiffs allege that Plaintiff and Wells Fargo conspired to deliberately structure the terms of their agreement to avoid judicial scrutiny by both this Court and the California Superior Court. (ECF No.140, pp. 10-11). The factual record exposes this argument for the sham assertion that it is. In fact, exactly the opposite transpired as both Plaintiff and Wells Fargo sought complete transparency vis-à-vis the settlement before both the Superior Court and this Court.

First, the initial settlement agreement itself, *by its own express terms*, provided for review and approval by the Superior Court. (ECF No. 137-3, Ex. F). Based on the fact that Plaintiff's appeal related to objections asserted in the State CPI Action, as well as this Court previous directive that all objections to the CPI settlement be dealt with in state court, there was no reason that the parties would also provide their settlement agreement to this Court. The provision in the initial settlement agreement providing for state court review and approval was agreed to by Wells Fargo *at Plaintiff's request* in an effort to ensure complete transparency and to avoid any issues that might arise as to whether the settlement required court approval. Greenfield Decl., ¶9; ECF No. 137 at 18 ("Wells Fargo agreed to

---

[4] The Tentative Ruling (TR) issued by Judge Cheng is not to the contrary. As discussed *infra*, pp. 9-11, Plaintiff's motion for preliminary approval was an attempt to provide full transparency with respect to the settlement and dismissal of his appeal, not an admission that the agreement constitutes a settlement of a derivative action requiring notice and court approval. Judge Cheng made no such finding. The Sales Practices Plaintiffs' extensive reliance upon Judge Cheng's TR, taken wholly out of context, underscores the conclusion that any issues regarding the settlement agreement should have been raised, if at all, in state court.

-9-

Feuer's seeking court review not because such review was required under state law … but rather because Wells Fargo believed it would be prudent to make the settlement public to avoid any questions about transparency."). [5]

In accordance with the terms of the initial settlement agreement, on September 10, 2020, Plaintiff filed a Motion for Order Preliminarily Approving Settlement for Withdrawal of Objections and Appeal in the State CPI Action (the "Motion for Preliminary Approval"). In addition, and again in an effort to ensure complete transparency, the Motion for Preliminary Approval was also provided *to this Court* on September 15, 2020. (ECF No. 132). The Motion for Preliminary Approval fully informed this Court as to the terms of the settlement agreement between Plaintiff and Wells Fargo and the reasons for it. (*Id.* at 16-18).

On October 5, 2020, the Superior Court (Judge Cheng) issued a TR on the Motion for Preliminary Approval, questioning whether the agreement was a settlement of a shareholder derivative action requiring court approval – be it by the Superior Court or this Court.[6] Plaintiff (with Wells Fargo's consent) had sought the Superior Court's approval so as to ensure complete transparency and not, as the Sales Practices Plaintiffs' contend, because of a "tacit admission" that the agreement was the settlement of a derivative action *requiring* court approval. (ECF No. 135, Ex. B). With the goal of transparency having been achieved, and after Judge Cheng indicated his tentative view (a view shared by Plaintiff and Wells Fargo) that the agreement was *not* the settlement of any active derivative claims not previously settled, on December 15, 2020, Plaintiff and Wells Fargo entered into a revised Stipulation of Settlement (the "Revised Settlement") which did not provide for court approval.

---

[5] No doubt had the initial settlement *not* provided for court review the Sales Practices Plaintiffs would be pointing to *that* as evidence of attempted blackmail and extortion. It is the Sales Practices Plaintiffs, not Plaintiff, whose approach has been "heads I win, tails you lose."

[6] Judge Cheng did not, as Sales Practices Plaintiffs allege, determine that "the agreement should have been submitted for approval *in this action*." (ECF No. 140, at 4) (emphasis in original). To the contrary, Judge Cheng indicated he was "unconvinced" that Plaintiff's objections and appeal were "a shareholder derivative action with *active* claims that were not previously settled." TR p. 3, line 12. Therefore, he reasoned that "without any active claims that were not previously settled, is the Court deprived of jurisdiction to 'preliminarily approve' this …settlement?" *Id.*, line 14-15.

The Sales Practices Plaintiffs' assert that the settlement agreement should have been submitted to *this Court* for app*roval*, arguing that such a result was implicated by Judge Cheng's TR and that there was a deliberate scheme to seek *"no judicial scrutiny whatsoever."* (ECF No. 140, pp. 10-11) (emphasis in original). This bad faith assertion is flatly contradicted by the fact that on January 19, 2021, *the parties submitted the Revised Settlement to this Court*, along with a copy of Judge Cheng's TR, the letter to Judge Cheng from Plaintiff's counsel withdrawing the Motion for Preliminary Approval, and an explanation that the parties would jointly move to dismiss this action on *res judicata* grounds rather than seeking court approval. (ECF No. 134 and Exhibits A-D thereto). At every step of the way Plaintiff and Wells Fargo have sought complete transparency.

### IV. There Is No Factual or Legal Basis for this Court to Order Sanctions Or Disgorgement

Without establishing standing, let alone any factual or legal basis, Sales Practices Plaintiffs assert that Plaintiff has "extorted" $1.5 million from Wells Fargo, which sums constitute "ill-gotten gains", by pressuring the Bank and "leveraging" his appeal, "the pendency of which prevented the finality of the $240 million settlement in the Sales Practices Action." (ECF No. 140, pp. 11-13). However, the terms of the Revised Settlement establish that this is untrue. The Stipulation of Settlement reflects that Wells Fargo, represented by competent counsel, believed the settlement to be in its best interests and wished to promptly resolve Plaintiff's appeal to allow *res judicata* effect to be accorded with respect to this Action and the State CPI Action (ECF No. 134-3 at 6). Further, Wells Fargo acknowledges that the payment to Plaintiff's counsel "reflects a portion of the savings achieved by Wells Fargo in the form of the reduction in fees awarded to plaintiffs' counsel in the State CPI Action "(*Id*.). It is Wells Fargo, as the allegedly aggrieved party, not Sales Practices Plaintiffs, who would be in a position to know whether there was "extortion", "blackmail," bad faith or anything other than what occurred - good faith, arms-length settlement negotiations between competent counsel. In fact, it was the *Bank's counsel who approached Plaintiff's counsel and initiated the discussions* that ultimately led

-11-

to the settlement agreement and resolution of Plaintiff's appeal. Greenfield Decl., ¶8. As confirmed by Wells Fargo's counsel, there was no "extortion", "blackmail" or "pressuring" by Plaintiff's counsel. See Wells Fargo & Company's Reply in Support of Joint Motion to Dismiss the Amended Complaint on the Grounds of Res Judicata and Opposition to Motion for Disgorgement, pp. 4-6.

Sales Practices Plaintiffs accuse Plaintiff and his counsel of acting in bad faith and violating their duty to serve the Bank's and its shareholders' interests by "abusing the terms of the settlements of the Sales Practices Action and the State CPI Action to extract a payoff from Wells Fargo." (ECF No. 140, pp. 12-15).[7] This assertion is particularly troubling in light of the fact that Plaintiff (1) had no control over the terms of either of these settlements and, (2) consistently objected *to these very terms*, asserting that the finality of these two unrelated settlements should not be contingent on each other. Objection of R.A. Feuer, State CPI Action, filed Sept. 17, 2019. (Greenfield Decl., Exh. E, pp. 23-28). Had Plaintiff intended to "abuse" and "leverage" these terms for his own personal gain, why would he have consistently drawn attention to them as improper and objectionable? Plaintiff did not negotiate or agree to these terms – *the Sales Practices Plaintiffs and their counsel*, among others, did. To the extent these terms provided an incentive for Wells Fargo to resolve Plaintiff's objections and appeal in the State CPI Action, that incentive was created *by the Sales Practices Plaintiffs themselves and their counsel* (among others), *not Plaintiff or his counsel*.

The facts of this case do not remotely support a finding of bad faith or application of the equitable remedy of disgorgement. The cases relied upon by the Sales Practices Plaintiffs involve so-called "professional objectors" who appear for the first time *after* a settlement is reached.[8] Here,

---

[7] The CPI State Action settlement and Sales Practices Action settlements were contingent on the "resolution" of each other and this action. *See* Sales Practices Action, ECF No. 270-1, ¶41(c) (conditioning settlement on '[t]he contemporaneous (but unconnected) resolution of the State CPI Action and the Feuer CPI Action."

[8] Sales Practices Plaintiffs cite *Barnes v. FleetBoston Fin. Corp.,* 2006 U.S. Dist. LEXIS 71072, 2006 WL 6916834 (D. Mass. Aug. 22, 2006). There, however, the Court found that appellants were "professional objectors" who make a living simply by filing frivolous appeals. Despite the many *ad hominem* attacks made by Sales Practices Plaintiffs, they do not, and cannot, allege that Plaintiff is a

-12-

Plaintiff had been actively pursuing claims derivatively on behalf of Wells Fargo since 2016 and in litigation since May 16, 2018 when his initial shareholder derivative complaint was filed. (ECF No. 1).

Further, as a result, at least in part, of Plaintiff's intervention and objections, as Wells Fargo acknowledges, additional concrete benefits were obtained for Wells Fargo's shareholders.[2] These include, *inter alia*, proposed revisions submitted by Plaintiff's counsel to the proposed settlement notice to shareholders, including clarification of (a) the claims and parties to be released, (b) the terms of the settlement; and (c) the related cases that would be affected by the settlement. Several of Plaintiff's proposed revisions were incorporated by the Parties in a revised settlement notice. (ECF No. 134-3 at 3). In addition, Plaintiff objected to the $5 million in counsel fees sought by plaintiffs' counsel and, after giving due consideration to the Objections, the Superior Court awarded $2,298,077.25 in fees and expenses, a reduction of $2.7 million.

This Court recently denied a motion for sanctions and disgorgement against an objector who obtained a $1.75 million settlement from Wells Fargo in exchange for dismissal of a state court appeal that likewise prevented finality and Wells Fargo's recovery of its $240 million in the Sales Practices Action – the precise scenario presented here. In denying disgorgement this Court stated:

> "[The Court is not convinced that, even if there was bad faith here, disgorgement of a settlement payment reached by two sophisticated, represented parties in a separate lawsuit would be an appropriate or even permissible remedy." (Sales Practices Action, ECF No. 355 at 9).

Sales Practices Plaintiffs rely heavily on the Seventh Circuit's decision in *Pearson* as providing the necessary authority for this Court to order disgorgement. (ECF No. 140 at 14-15).

---

"professional objector." Indeed, any such allegations would be facially ludicrous in light of his pursuit of Wells Fargo shareholder claims since 2016.

[2] As recognized in *Pearson v. Target Corp.*, 968 F. 3d 827, 838 (7th Cir. 2020) ("*Pearson*") good faith objectors such as Plaintiff provide "genuine adversary representation" in connection with a court's evaluation of proposed class or derivative settlements. That is precisely the function that Plaintiff provided here.

-13-

However, as previously recognized by this Court, there is a critical distinction between the *Pearson* case and the scenario presented here:

> [T]he payments made in *Pearson* were made for the withdrawal of objections in that case, while the payment at issue here was made for the withdrawal of an objection in the state case – a case that is pending before another court. While *Pearson* is persuasive authority that a district court may order disgorgement of side payments received in a case pending before it, Co-Lead Plaintiffs have not cited any authority that would allow this Court to Order disgorgement of monies received in a case pending before *another* court." Indeed, to the extent *Pearson* addresses the question at all, it supports not ordering disgorgement. The *Pearson* court noted that if Nunez had taken a payment to settle his separate California case, he could have "avoid[ed] … scrutiny," *id.* at 835, suggesting that in that instance the court would not have ordered disgorgement."

Sales Practices Action, ECF No. 355 at 11 (emphasis in original).[10]

Sales Practices Plaintiffs attempt to distinguish this Court's recent decision in the Sales Practices Action by asserting that Plaintiff's "agreement with the Bank necessarily entails settlement or voluntary dismissal of his claims in *this* Action, before *this* Court." (ECF No. 140 at 15) (emphasis in original). This is not correct. Plaintiff's agreement with the Bank is for resolution of his objections and appeal filed and litigated in the Superior Court. The Bank made clear as early as two years ago, and well before Plaintiff's objections in the State CPI Action were filed or appealed, that it would move to dismiss this case on *res judicata* grounds upon entry of final judgment in the State CPI Action. The fact that this finality came about by way of a settlement agreement resolving Plaintiff's appeal does not transform the settlement agreement between Plaintiff and Wells Fargo into a settlement or voluntary dismissal of *his claims in this Action*. The claims *in this Action* were settled by plaintiffs in the State CPI Action settlement, resulting in the Parties Joint Motion for dismissal on the grounds of *res judicata*.

---

[10] Further in *Pearson,* unlike here, the payments to objectors were not voluntarily disclosed. Rather, the payments were only revealed when another objector became suspicious when three objectors dismissed their appeals (without disclosing the payments). 968 F. 3d at 831. Here, Plaintiff submitted the settlement agreement to the Superior Court for approval and likewise provided it to this Court.

-14-

# **CONCLUSION**

Wells Fargo and Plaintiff, both represented by experienced counsel, reached an arms-length agreement for resolution of Plaintiff's appeal filed in Superior Court in connection with his objections to the State CPI Action settlement. Plaintiff and Wells Fargo have, at all times, been completely transparent with both the Superior Court and this Court regarding the terms of that settlement agreement and its effect on this case pursuant to well-established principles of *res judicata*. The settlement agreement at issue is *not* the settlement, compromise or voluntary dismissal of *either* this action or the California State CPI Action and, therefore, Rule 23.1 is not implicated. The Joint Motion to Dismiss should be granted.

Dated: March 22, 2021

Respectfully Submitted,

CIARDI CIARDI & ASTIN

/s/ Walter W. Gouldsbury III
Gary B. Elmer, Esq. (SBN 137885)
Walter W. Gouldsbury III, Esq. (SBN 240230)
600 B Street, Suite 300
San Diego, California 92101
Tel: (619) 270-8811
Fax: (619) 923-2125
E-mail: gelmer@ciardilaw.com
         wgouldsbury@ciardilaw.com

-and-

GREENFIELD & GOODMAN LLC

Richard D. Greenfield, Esq.

(Admitted *pro hac vice*)

1905 Spruce Street
Philadelphia, PA 19103
Telephone: (917) 495-4446
E-mail: rule23gg@gmail.com